Edith Hamson, Appellee, v. The Travelers' Insurance Company, Hartford, Connecticut, Appellant.

Gen. No. 8,787.

Heard in this court at the October term, 1933. Opinion filed January 12, 1934. Rehearing denied April 3, 1934.

JESSE BLACK, JR., for appellant.

WILLIAM A. POTTS and ROBERT H. ALLISON, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Edith Hamson recovered a judgment in the sum of $2,000 against appellant in an action of assumpsit, based upon an insurance policy issued to her brother and in which she was named beneficiary.

The declaration consists of a special count in which the certificate of insurance is set out in *haec verba* and it is alleged that the defendant promised to pay plaintiff, as beneficiary, the initial sum of $1,500 on the death of the said Henry L. Hamson, and an increased amount from year to year in consideration of the continued service of the said Henry L. Hamson to the Corn Products Refining Company; that the amount of said insurance was increased to $2,000 by defendant on January 16, 1928; that on August 25, 1930, said Hamson, while working for Corn Products Refining Company, became sick and while said certificate of insurance was in full force and effect departed this life on October 10, 1931, and that the plaintiff gave notice to defendant of his death on November 10, 1931.

It is further alleged in said special count that said certificate states on its face that it is subject to the terms and conditions of Group Life Policy No. G–2632,

issued and delivered to Corn Products Refining Company, and plaintiff has never had access thereto; that said Hamson during his lifetime complied with all the terms of said certificate of insurance on his part to be performed; and that plaintiff has at all times since performed all the terms and provisions of said policy upon her part by the terms thereof to be kept and performed.

In addition to said special count the common counts were added and to which declaration the defendant filed a plea of the general issue and the parties thereupon stipulated that ''all proof may be offered by the respective parties in said cause under the declaration and plea of the general issue which would be competent under a declaration and plea, either general or special, well pleaded, and also proof competent under any subsequent pleadings which might have been well pleaded by the respective parties.''

The certificate of insurance originally issued to said Henry L. Hamson was for the sum of $1,500, and under the terms of which this amount was increased $100 per year during the period of continuous service of said Hamson to said Corn Products Refining Company until the maximum of $2,000 was reached. Each year a new certificate was issued to the insured which included the additional $100, and when Henry L. Hamson died he held a certificate for the maximum amount of $2,000. The beneficiary in the certificate of insurance is Edith Hamson, sister of the assured and appellee in this court.

The certificate contains the following provisions: ''The insurance of any employee covered hereunder shall end when his employment with the employer shall end or prior thereto when the employee shall notify the employer to make no further deduction from his pay, except in a case where at the time of termination of employment the employee shall be

wholly disabled and prevented, by bodily injury or disease, from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee.''

The group policy contains the following provision:

''4. Reports of Registration Data by Employer: The employer shall furnish the company monthly with the names of all employees who shall become eligible to insurance hereunder together with the names of the beneficiaries of such employees and such data as may be necessary to determine the amount of insurance and the amount of premium therefor, and the employer shall likewise furnish the company with the names of employees whose insurance shall be terminated with the date of termination of insurance.

''5. Termination of Insurance: The insurance of any employee covered hereunder shall end when his employment with the Employer shall end, except in a case where at the time of such termination the Employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such Employee during the continuance of such disability for the period of three months from the date upon which the Employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the Employer shall notify the Company to terminate the insurance as to such Employee. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit

to which an Employee shall become entitled under this policy.

''Temporary lay-off or leave of absence for reasons other than physical disability as aforesaid shall not be considered as termination of employment for the purpose of this insurance unless the Employer shall so elect.''

''14. Entire Contract: This policy, the application of the Employer and the individual applications, if any, of the Employees insured shall constitute the entire contract between the parties.''

The group plan of insurance was adopted by the Corn Products Refining Company on March 15, 1923, and on April 9, 1923, appellant issued to it the above mentioned group policy. This policy was issued by appellant in consideration of the application of the Corn Products Refining Company and the payment by it of the premium provided to be paid by the terms of said group policy. At the beginning of the policy year the Corn Products Refining Company pays the premium in advance for the entire amount covered by the group of employees at each plant. The full amount of the premium is never collected back from the employees, the rate charged by it to its employees being 50 cents per month regardless of the face amount of the certificate of insurance held by such employee. The deceased had entered the employ of the Corn Products Refining Company on January 26, 1918, and had been a continuous employee of said company for over five years, when he made his application for a certificate of insurance, and was entitled to and did receive one insuring him in the sum of $1,500.

In his original application for a certificate of insurance he authorized his employer to deduct the sum of 50 cents per month from his wages to apply toward the premium for insurance provided for in the policy of group insurance, issued by appellant to the Corn

Products Refining Company, and this amount was deducted each month from his wages by his employer. The proofs show that such deductions from his wages were made up to the 22nd day of August, 1930. In July, 1930, the assured became ill and for a time was unable to work during that month and a portion of the month of August, 1930. In August, 1930, he returned to his employment and worked for about three weeks, when he again became ill and unable to work; and from August 22, 1930, on account of such illness he was disabled from engaging in any occupation or employment for wage or profit during the remainder of his life. Thereafter he made payment in cash upon his insurance assessments up to and including the month of April, 1931. These monthly payments were sometimes made by the insured, and sometimes by his sister, the appellee, and were frequently collected by Mr. Hough, who was paymaster of the Corn Products Refining Company and had entire charge for that company of the group insurance of its employees.

He testified that he sent the money, so collected, to the New York office of the Corn Products Refining Company and that the insurance was allowed to get behind as he did not like to send a check or draft for an amount under one dollar, and he would let the insurance build up until it was at least a dollar or a dollar and a half and then get a draft. During all this time the assured was carried on the books of the Corn Products Refining Company as an employee, although he was receiving no wages.

On July 13, 1931, Mr. Hough went to the home of the assured, who tendered him $1.50 for assessments due on insurance for the months of May, June and July, 1931. The tender was made in cash. Mr. Hough testified that he told the assured and appellee at that time that he would not take the money as he was going to cancel the policy on August 1, 1931, and would waive

the amount due for May, June and July. He further testified that the insurance was not canceled because the payments were not kept up by the assured. The assured died October 10, 1931. On September 9, 1931, the Corn Products Refining Company reported to appellant that it had canceled the assured's certificate on August 1, 1931, and on that date he was removed from their inactive employees' list.

It is claimed that the liability of appellant ceased on August 1, 1931, because he ceased at that time to be an employee of the Corn Products Refining Company and was not such an employee on October 10, 1931, when he died.

We cannot agree with this contention. Both the certificate of insurance and the group policy provide that the insurance of any employee shall end when his employment with the employer shall end, except in a case where at the time of termination of employment the employee shall be wholly disabled and prevented by bodily disease from engaging in any occupation or employment for wage or profit, and, in such case, the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work.

There is no contention but that on August 1, 1931, the time when appellant claims this certificate was canceled and the assured ceased to become an employee of the Corn Products Refining Company, the assured was wholly so disabled by disease.

Appellant also contends that because the provision of the certificate and of the group policy provides, further: "In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work, etc.," and as the assured ceased to work in August,

1930, that the word "employment" theretofore used in this provision means actual work, and as assured ceased working in August, 1930, that the provision for the extension of time of the life of the certificate for three months after the end of his employment does not apply.

It is a familiar rule in the construction of insurance policies, where the meaning of the language used therein is uncertain or an ambiguity exists, that the construction will be adopted which is most favorable to the assured, and, therefore, the words "cease to work" will be construed to mean cease to be employed, otherwise they would be in contradiction with the provision that the insurance of any employee shall end when his employment with the employer shall end.

According to appellant's own proofs the Corn Products Refining Company carried the assured on its books as an employee until August 1, 1931, and collected all of the monthly instalments due from him up to that date, except the instalments for the months of May, June and July, 1931, the payment of which was waived by it, and thereby recognized that his certificate of insurance was in full force.

The certificate of insurance and the group policy both provide that the insurance shall end when the employment ends and not when he ceases to work. They further provide that the insurance shall also continue until the employer shall notify the company to terminate the insurance as to such employee, and the Corn Products Refining Company did not notify appellant to terminate the insurance until September 9, 1931, and then gave as a reason that he had left the company August 1, 1931. The words "left the company" can only mean that the employment of the assured ceased on August 1, 1931, but the certificate of insurance and the group policy specifically provide that if at such time the employee shall be wholly dis-

abled and prevented by bodily disease from engaging in any occupation or employment, for wage or profit, the insurance will remain in force during the continuance of such disability for the period of three months, and the assured on August 1, 1931, being wholly disabled and prevented by bodily disease from engaging in any occupation or employment for wage or profit, said certificate of insurance remained in force during the continuance of such disability for a period of three months or until October 31, 1931.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*