Pauline Thieme, Appellee, v. Union Labor Life Insurance Company, Appellant.

Gen. No. 46,916.

First District, Second Division.

November 27, 1956.

Released for publication January 8, 1957.

Nash, Ahern & McNally, and Thomas D. Nash, Jr., all of Chicago, for appellant.

McKinley and Price, and William Greene, all of Chicago, for appellee; Paul E. Price, of counsel.

PRESIDING JUSTICE ROBSON delivered the opinion of the court.

Plaintiff brought this action as beneficiary named in an individual certificate of insurance furnished to Max Thieme, deceased, to recover insurance benefits in the sum of $1,500 under the provisions of a policy of group life insurance issued by defendant, The Union Labor Life Insurance Company, to International Photo Engravers' Union insuring the life of every member in good standing of that union at the time of his death. The trial court, without a jury, found the issues for plaintiff and entered judgment against defendant for the sum of $1,500. Defendant appeals.

Defendant assigns a number of errors. We are of the opinion, however, that there is one issue that is determinative in this case. It is: Does the insurance in question come within the provisions of the Illinois Insurance Code, as revised in 1947, regulating policies of group insurance issued or delivered in this State?

The facts relevant to our decision are that in 1928 defendant executed a master policy of group life insurance at its office in Washington, D.C. and delivered it to International Photo Engravers' Union, located in St. Louis, Missouri. Chicago Photo Engravers' Union No. 5 is a local of the International.

The decedent after having been suspended for some twelve years was reinstated to membership in good standing in the Union on November 1, 1943. On January 1, 1953, defendant issued to decedent a certificate of insurance which stated on its face that it was furnished in accordance with the terms of the group policy

and subject to all the terms and provisions of it. Thereafter decedent paid his dues to the Local for the period from January, 1953, to March, 1954. The dues were payable monthly in advance but in no instance did he make the payments in advance. In fact, he made his payments in July of 1953, November of 1953, January of 1954 and March of 1954. On each of these occasions the payments included arrearages. He failed to pay his dues for the months of April, May and June of 1954. Of the dues received each month, the Local remitted to the International $3.75 per month, of which $2.25 was for insurance and benefits, and the balance was retained in the general fund. On June 10, 1954, the Local informed decedent by registered mail that its records indicated he was delinquent in payment of membership dues and, if he failed to respond, it would proceed with a recommendation of suspension. Decedent failed to respond and on July 6, 1954, he was suspended. On July 9, 1954, the Local sent a notice of the action taken to decedent, together with a statement that he was privileged to be reinstated on the payment of arrearages. Decedent died on July 15, 1954.

█ To decide the issue, we must first ascertain whether the laws of the District of Columbia, Missouri, or Illinois govern the policy. The master policy contains no statement as to what law should govern an interpretation of the liabilities of the insurer under the contract. In a well-reasoned article entitled, "A Rationalization of the Illinois Conflict of Laws Rules Applicable to Contracts" by Russell S. Bernhard, 40 Ill. Law Rev. 165 (1945), the author states the following rule from a summary of Illinois conflicts of law cases (p. 184):

"When the substantive rights of the parties to a contract are at issue, and the public policy of Illinois is not involved, the court will resolve a conflict of laws problem by basing its selection of the applicable law

on the intention of the parties, applying that law expressly or impliedly indicated by the parties to be controlling."

See citations 40 Ill. Law Rev. 167–183.

In the case before us the master policy does not contain any provision setting forth the law applicable to an interpretation of the insurance contract. The certificate of insurance received by decedent was delivered to him by the defendant in this State. He became entitled to this by reason of his membership in the Local which had its office in this State. The public policy of the State with reference to the regulation of insurance is an issue. The parties to the action do not question this fact. We are of the opinion that under the conflict of laws doctrine in this State we are permitted to and should apply the law of Illinois to an interpretation of the contract. In view of this conclusion we must now decide whether the certificate issued by defendant to decedent constitutes a part of the insurance contract.

The Supreme Court of the United States in the case of Boseman v. Connecticut General Life Ins. Co., 301 U. S. 196, held that where a master policy of group insurance stipulated specifically that the law of Pennsylvania was to control the rights of the parties to the contract, a certificate delivered to an insured employee in Texas did not constitute a part of the contract for the purpose of applying the law of Texas to the contract. In line with this decision, three United States district courts have held that a certificate containing no substantive provisions not already embodied in the master policy did not form a part of the insurance contract. Commercial Ins. Co. of Newark v. Burnquist, 105 F. Supp. 920 (D.C.–N.D. Iowa, 1952); Walls v. Connecticut General Life Ins. Co., 82 F. Supp. 421 (D.C.–D.C., 1949); Collier v. Metropolitan Life Ins. Co., 82 F. Supp. 529 (D.C.–D.C., 1949).

However, in the case of Parks v. Prudential Ins. Co. of America, 103 F. Supp. 493 (D.C. Eastern District of Tenn. 1951), the court in applying the law of Tennessee reached a contrary conclusion and found that the certificate established a definite contractual relationship between the insured and the insurance company despite an agreement between the insurance company and the employer to amend the policy. The facts on which the court reached this conclusion were that the employer and the company eliminated the disability provisions from the master policy and reduced the premium rates payable by the employees. No revision of certificates was made and the question was whether or not the plaintiff was entitled to the disability coverage set forth in his certificates, but eliminated from the master policy. In determining that he was so entitled the court made two distinct findings: (1) That under Tennessee law the contributions of premium payments by the employee to the employer established a definite contractual relationship between the employee and the insurance company, and (2) that a provision in the master policy for the issuance of a certificate setting forth the protection to which the insured was entitled rendered the protection as set forth in the certificate binding upon the parties. Where the certificate varies in substance from the terms of the master policy it forms a part of the contract of insurance. John Hancock Mutual Life Ins. Co. v. Dorman, 108 F.2d 220 (CA-9, 1939). A certificate purporting to insure the life of an employee so long as he remains in the employment of the company holding the master policy is in itself a policy of insurance. Metropolitan Life Ins. Co. v. Whitler, 172 F.2d 631 (CA-7, 1949).

In the case now before us the master policy and certificate differ in several respects. The amount of insurance in the master policy is $1,000; in the certificate it is $1,500. The effective date of the master policy is

114

December 1, 1928; the effective date of decedent's coverage on the face of the certificate is January 1, 1953. There is a provision in the master policy for the issuance of a certificate setting forth a statement of the protection to which the insured is entitled.

■ The Illinois Appellate Courts for three different districts, while not having the precise issue before them, have determined the rights of an insured under a policy of group insurance by treating both the master policy and the certificate as integral parts of the contract. Thompson v. Metropolitan Life Ins. Co., 318 Ill. App. 235 (Second Dist.–1943); Kolodziej v. Metropolitan Life Ins. Co., 307 Ill. App. 657 (First Dist.–1940); Baker v. Prudential Ins. Co., 279 Ill. App. 5 (First Dist.–1935); Wisz v. Metropolitan Life Ins. Co., 277 Ill. App. 343 (First Dist.–1934); Hamson v. Travelers' Ins. Co., 274 Ill. App. 80 (Third Dist.–1934). As we have heretofore stated, in the absence of a provision to the contrary in the master policy, we should apply the law of Illinois and under that law we are of the opinion that the certificate is a part of the contract.

We must next determine whether the date of execution of the master policy or the date of the delivery of the certificate is pertinent to a selection of the controlling statutory provision. The instant contract of term insurance was renewable annually. It is clearly the law in this State that a contract of annually renewable insurance forms a new contract at each renewal for the purpose of incorporating into the contract the statutory provisions enacted after the creation of the original contract relationship. Dickirson v. Pacific Mutual Life Ins. Co., 319 Ill. 311 (1926). See also Klinke v. Great Northern Life Ins. Co., 318 Ill. App. 43 (Fourth Dist.–1943). It is apparent, therefore, that neither the date on which the master policy was executed, nor the date on which the certificate was issued to decedent, is of any consequence in determining whether or not a

specific statutory provision is applicable to the contract in question.

Prior to 1947, the Illinois courts have held that where the insured under a group policy died within thirty-one days after the termination of his employment without making application to convert to an individual policy, his coverage under the group policy terminated simultaneously with the termination of his employment. Crutchfield v. Continental Assurance Co., 336 Ill. App. 411 (Fourth Dist.–1949); Howard v. Aetna Life Insurance Co., 329 Ill. App. 248 (First Dist.–1946).

In 1947 our insurance code was amended. The following is a summary of the changes made that are relevant to this case. Chapter 73, Ill. Rev. Stats. 1955, sec. 843(k) requires a policy of group life insurance issued in Illinois to contain a provision allowing a claim to be payable under the policy to an individual entitled under sec. 843(d) to convert to an individual policy, whether or not that individual has made application to convert, so long as the claim is made within the period during which he would have been entitled to have an individual policy issued. Sec. 843(d) allows a thirty-one day period of grace for conversion from group to individual insurance after the termination of the employment or membership of the individual in the group insured.

Section 842, subsection 2(c) states that life insurance covering the members of a labor union is group insurance within the meaning of the Illinois Insurance Code. The word policy as used in the code means an insurance policy or contract and includes certificates of fraternal benefit societies, assessment companies, mutual benefit associations, and burial societies. (Ch. 73, Ill. Rev. Stat. 1955, sec. 614(n).)

█ Defendant argues that since the group policy was issued in December, 1928, which was prior to the effective date of the statute, its provisions would not

116

be applicable to decedent's insurance. As we have heretofore stated, the law of Illinois affecting a contract of annually renewable term insurance is to the contrary. As to holders of group insurance certificates delivered in this State and issued under a master policy of annually renewable term insurance, the annual renewal of the master policy forms a new contract of insurance each year for the purpose of incorporating into that contract any statutory provisions relating to group insurance enacted prior to the date of renewal. Decedent's membership in the union was terminated by resolution of the local on July 6, 1954. Under the provisions of the insurance act as amended in 1947, defendant was required to maintain the insurance policy upon the decedent for at least thirty-one days after this date. Decedent died on July 15, 1954. We conclude, therefore, that he was covered by the terms of the policy.

Judgment of the trial court is affirmed.

Judgment affirmed.

SCHWARTZ and McCORMICK, JJ., concur.