**Harriet S. POFFENBARGER, Plaintiff,**

v.

**NEW YORK LIFE INSURANCE COMPANY, a corporation, Defendant.**

**Civ. A. No. 2911.**

United States District Court
S. D. West Virginia,
Charleston Division.

Dec. 22, 1967.

Charles M. Love, Jr., and Charles R. McElwee, Dayton, Campbell & Love Charleston, W. Va., for plaintiff.

W. T. O'Farrell, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

FIELD, Chief Judge.

This action was instituted by the plaintiff, Harriet S. Poffenbarger, to recover from the defendant the sum of $20,000, together with interest and costs, alleged to be due her as the named beneficiary in a certificate of life insurance in that amount issued to Nathan S. Poffenbarger, her deceased husband, under Group Life Insurance Policy No. G-2213-0. This group policy had been issued by the defendant to the Trustees of the American Road Builders' Association Insurance Trust Fund in which group policy Criss & Shaver, Inc., a West Virginia corporation, was a participating employer.

The Trustee's application for the master policy was prepared and mailed from the District of Columbia to the defendant and the group policy was also received by the Trustees in the District of Columbia. Additionally, all other instruments incident to this insurance program were executed by the Trustees in the District of Columbia.

Under a caption entitled "EMPLOYEES TO BE INSURED," the master policy set forth the classes of the members eligible for insurance as follows:

"Classes of Employees Eligible: The following classes of employees are eligible for insurance:

"All active full-time permanent employees of employers who become Participating Employers under this policy prior to January 1, 1956.

"For the purposes of this policy (a) employees who work less than thirty hours per week shall not be considered full-time employees, and (b) Partners, Proprietors and Corporate Officers shall be considered full-time employees if they are actively engaged in, and devote a substantial portion of their time to, the conduct of the business."

On April 1, 1960, Nathan S. Poffenbarger made an application to the defendant on a card form on which he stated his date of birth as August 4, 1898, and the date of his employment as January 1938. He listed his position with the participating employer as "General Counsel" and designated the

plaintiff, his wife, as beneficiary. This application contained the following language:

"I hereby request the issuance of the insurance to which I am now entitled, or to which I may become entitled, under the terms of the group policy or policies issued to the group policyholder by the New York Life Insurance Company."

The form indicated the name of ARBA as the group policyholder, Criss & Shaver, Inc., as the participating division, and was signed by Mr. Poffenbarger. Under the caption entitled "Insurance Class" the sum of $10,000 was originally written but that figure was stricken and the sum of $20,000 inserted in lieu thereof. This application was mailed by Criss & Shaver, Inc., to the Trustees in Washington, D.C.

Two insurance certificates were thereafter issued to Nathan S. Poffenbarger, both being numbered 4945. The first shows an effective date of May 1, 1960, and represents the amount of life insurance to be $10,000. The second, being the certificate upon which this action is based, likewise shows an effective date of June 1, 1960, and specifies the amount of life insurance as $20,000. The certificate summarizes some of the provisions of the master policy and states that the certificate is merely evidence of the insurance provided under the group policy. Both of the certificates were forwarded by the Trustees from the District of Columbia to Criss & Shaver, Inc., for delivery to Mr. Poffenbarger, and were in fact delivered to him in Charleston, West Virginia. Premiums on Mr. Poffenbarger's insurance were paid to the defendant through periodic remittances to the Trustees, and it would appear that no portion of the premiums had been returned by the defendant to either Criss & Shaver, Inc., or to the plaintiff prior to the institution of this action. Concededly, the failure to return these premiums might be explained by reason of the somewhat intricate bookkeeping incident to the broad group insurance program administered by the Trustees.

Mr. Poffenbarger died on July 19, 1962, at the age of 63 years, his death occurring two years, one month and 19 days from the effective date of the certificate here in question. Thereafter proper proofs of death and claim were duly filed on behalf of the plaintiff as beneficiary under the certificate, but payment thereafter was refused by the defendant. The defendant takes the position that Nathan S. Poffenbarger was not eligible for life insurance under the provisions of the group policy and that insurance on his life never became effective under either the policy or the certificates. The defendant further states in its answer that it did not learn of Mr. Poffenbarger's ineligibility until after his death. The defendant contends that under these circumstances the plaintiff is not entitled to receive any amount of insurance benefits.

Under these circumstances it would be necessary to determine whether Mr. Poffenbarger was one of the "corporate officers" of Criss & Shaver, Inc., within the meaning of the policy provisions and, if so, whether as a matter of fact he devoted a "substantial portion" of his time to the conduct of the corporation's business. However, counsel for the plaintiff take the position that the insurance company is precluded from raising this defense by reason of the incontestability provision of the policy, and have moved for summary judgment in favor of the plaintiff. In addition to the pleadings, exhibits and depositions, certain facts have been stipulated by counsel for the litigants and it would appear that there is no genuine issue with respect to any material facts relevant to this motion and, accordingly, summary disposition on this issue would be appropriate.

The relevant provisions bearing on this issue appear on page 5 in the master policy under the caption entitled "GENERAL PROVISIONS" and read as follows:

"Incontestability: The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for one year from

the date of issue. The validity of the insurance on any employee shall not be contested, except for non-payment of premiums, after his insurance has been in force for one year during his lifetime. No statement made by an employee relating to his insurability shall be used in a contest unless (a) it is contained in a written request for insurance signed by him, and (b) a copy of such request has been furnished to him or his beneficiary.

"Employee's Certificate: New York Life will issue to the Policyholder for delivery to each insured employee an individual certificate setting forth in summary form a statement of the essential features of the insurance coverage of the employee, and stating to whom the benefits are payable.

\*  \*  \*  \*  \*  \*

"Information to be Furnished: The Policyholder shall furnish the information necessary to administer this policy whenever required by New York Life. At any reasonable time, New York Life shall have the right to inspect any records of the Policyholder or any Participating Employer or in the possession of the Policyholder or any Participating Employer which relate to this policy."

█ Since this is a diversity case the *Erie* doctrine requires that West Virginia law control the disposition of the issues, including any problem of conflict of laws. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). If West Virginia law is applicable on the effect to be accorded the incontestability provisions of the group policy, it is unnecessary to review the welter of cases on this subject since the decision of our Supreme Court of Appeals in Morris v. Missouri State Life Insurance Co., 114 W.Va. 278, 171 S.E. 740 (1933), is dispositive of the issue.

In that case the plaintiff was issued a certificate in the face amount of $3,000 under a group life insurance policy issued to McDowell County Employees'

Association. Under the terms of the group policy, members of the county court and heads of departments were eligible for insurance in the amount of $3,000 and other county employees were entitled to coverage in the amount of $2,000. The policy further provided that only fulltime employees of the county were eligible for coverage thereunder. In August 1930 plaintiff became a deputy sheriff of the county at a salary of $25 per month and in this capacity served the county only as a part-time employee. On December 1, 1930 he applied for and received his certificate of coverage in the amount of $3,000. In August 1932 he asserted a claim under the policy, and the insurer contended that since the plaintiff was not a full-time employee of the county and was neither a department head nor member of the county court, he was not eligible for insurance coverage under the policy and, in any event, was not entitled to coverage in the amount of $3,000. In holding that the incontestability clause precluded the insurer from setting up the defense of fraud in its procurement, the Court stated:

"As to fraud. It appears from the record that when plaintiff made application to be included under the said group policy, and, a little later, on the basis of said application, received a certificate identifying him as one of the persons entitled to the protection of said policy, he was not a full time employee of the county of McDowell, he was not a member of the county court or a department head, nor had he begun his employment at the time stated in his application. These matters all involve misrepresentations of fact, or, in other words, fraud in the procurement of his certificate. Ordinarily, this would vitiate his claims under the policy, but there is an incontestability clause in the policy. It reads: 'This policy shall be incontestable after one year from its date of issue, except for non-payment of premium.' The policy was issued July 11,

1930. Plaintiff's claim against the company for benefits under the disability clause was first asserted in August, 1932. Much more than one year had elapsed.

"Many cases have dealt with incontestability clauses of life insurance policies. The holdings seem unbroken that under such clause, especially where it does not become operative from the date of the policy but from a later date fixed by the policy, fraud in the procurement of the policy cannot be made a defense subsequent to the date fixed by the policy when it shall be deemed incontestable. (Citing cases.)"

Counsel for defendant has attempted to distinguish the *Morris* case, but in my opinion the facts presented here clearly fall within the principle enunciated in that opinion. Indeed there are other elements present here, and they all work against the insurer and in favor of the plaintiff. In *Morris* the Court was dealing with a case of fraudulent misrepresentation in procurement of coverage by the insured. In the present case Mr. Poffenbarger filed an application stating his position as "General Counsel" and requesting the issuance of the insurance to which he was entitled or to which he might become entitled. The representations in the application were open, accurate and true, and the certificates of insurance were necessarily issued pursuant to those representations.

■ The master policy specifically states that New York Life is the party issuing the certificates of insurance, and gives the insurer the right to require any information or to inspect any records necessary to the administration of the policy. As counsel for plaintiff point out, in the light of the disclosures in the application, New York Life made the decision that Mr. Poffenbarger was entitled to $20,000 life insurance coverage, issued the certificates and permitted them to remain in effect until his death without exercising its right under the policy to require any further information. Finally, it should be noted that the language of the incontestability clause here in question is much broader than that usually encountered in cases of this type. Here, except for non-payment of premiums, not only is the validity of the "policy" immune from contest after one year, but, additionally, the validity of insurance on any employee is also immune therefrom.

In my opinion these factors place the plaintiff here in a much stronger position than the insured in *Morris*. I might add that they also are more than sufficient to distinguish the instant case from Fisher v. United States Life Ins. Co. in City of N. Y., 145 F.Supp. 646 (D.C.Md.), aff'd, 249 F.2d 879 (4th Cir. 1957), cited by defendant, although such a distinction would appear to be merely persuasive in its nature and not at all necessary in the disposition of this case under the *Erie* doctrine.

■ Defendant contends, however, that in any event *Morris* should not apply since this case should be governed by District of Columbia law inasmuch as it was there that the group policy was delivered to the Trustees. It is well established in West Virginia that the *lex loci contractus* governs the nature, construction and validity of contracts. Klinck v. Price, 4 W.Va. 4 (1870). However, beyond that general principle, neither statute nor decisional law is available to indicate West Virginia's choice of the law to be applied in this troublesome area of group insurance contracts and the delivery of certificates thereunder. In the absence of state decisional law, it is the responsibility of the federal court to determine what the highest state court would find the law to be on this point if the same case were before it. See Markham v. City of Newport News, 292 F.2d 711 (4th Cir. 1961).

Counsel for both sides concede that on the facts presented here the West Virginia Court would be confronted with the choice of applying either the law of this state or the law of the District of Columbia. Some states have applied the law of the state in which the master policy was delivered, while others have

applied the law of the state in which delivery of the certificate was effected. Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937), is the leading case in the first line of decisions while Thieme v. Union Labor Life Ins. Co., 12 Ill.App.2d 110, 138 N.E.2d 857, and Coleman v. Aetna Life Ins. Co., 261 F.2d 296 (7th Cir. 1958), are representative of the latter line.

Assuming the West Virginia Court elected to apply the law of the District of Columbia, it would find no case law in that jurisdiction dispositive of the substantive issue. Under the circumstances it would be presumed that the law of the District would be the same as that of the forum, see Vigderman v. United States, 175 F.Supp. 802 (D.C.E.D. Pa.1959); Restatement, Conflicts § 622; and the holding in Morris v. Missouri State Life Insurance Co., supra, would apply. And, of course, should our Court follow the *Thieme* line, then, as heretofore noted, *Morris* would be dispositive of the question.

Finally, it is not unreasonable to assume that our West Virginia Court in a case such as this might choose to apply the relatively new "grouping of contacts" theory of the conflict of laws. This theory would permit the forum to apply the law of the jurisdiction most intimately concerned with the outcome of the particular litigation. See Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954). In the present case the State of West Virginia would appear to have a legitimate concern in the outcome of the litigation. This manifest interest of a state in the area of insurance on its residents was recognized in another context by the Supreme Court in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). It occurs to me that a West Virginia Court would and should recognize as significant the fact that the certificate was delivered in this state to the insured who was a resident of the state at the time, and that the plaintiff-beneficiary, as a West Virginia resident, is properly and logically entitled to litigate her claim in this forum. Additionally, it is noted that West Virginia legislation relative to group life insurance demonstrates a valid concern in regard to the issuance and delivery of such certificates in this state. See W.Va.Code ch. 33, art. 14.

 The totality of these contacts and circumstances alone might well persuade the West Virginia Court to apply West Virginia law and recognize its holding in *Morris* as controlling on the facts of the present case. Certainly such a conclusion would not offend the basic principles of justice. The plaintiff's motion for summary judgment will be granted and counsel may submit an appropriate order incorporating this opinion by reference therein.