RAVENNA C. SWANBERG, Adm'r of the Estate of Alfred A. Swanberg, Deceased, Plaintiff-Appellee, *v.* THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, Defendant-Appellant.

First District (5th Division)   No. 79-40

Opinion filed December 7, 1979.

Peterson, Ross, Schloerb & Seidel, of Chicago (Joseph J. Hasman and Ernest W. Irons, of counsel), for appellant.

William P. Butcher, of Homewood, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, the administrator of the estate of decedent, Alfred A. Swanberg, brought this action against the Mutual Benefit Life Insurance Company (Mutual), alleging that Mutual had violated section 367.1 of The Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 979.1) by failing to provide a continuation of group insurance benefits to Swanberg and by failing to notify him of his right to keep the health and accident insurance policy in effect after the termination of his employment. Both parties filed motions for summary judgment and judgment was entered in favor of plaintiff. On appeal, Mutual contends that: (1) the trial court erred in retroactively applying section 367.1 to Mutual's group policy; and (2) the trial court should have granted Mutual's motion for summary judgment. We reverse. The parties stipulated to the following facts.

Swanberg became an employee of the H. Wilson Corporation on or

about July 7, 1975. The Corporation was then a member of the Upper Midwest Employers' Association (Association) which was organized under Minnesota law. On May 29, 1969, the Association had entered into a trust agreement with the First National Bank of Minneapolis (Trustee), creating the Upper Midwest Employers' Association Group Insurance Trust (Trust). The stated purpose of the trust was "to establish a plan or plans of life, accidental death and dismemberment, health and such other forms of insurance which the individual and employer members may desire." The Trust also contained the following provision in article VI, paragraph F:

"This Trust is accepted by the Trustee in the State of North Dakota, and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of that State."

On December 12, 1973, Mutual issued and delivered to the Trustee a group insurance policy insuring "against loss resulting from accidental bodily injury or from sickness for eligible persons and their eligible dependents, if any." The policy became effective October 15, 1973, and also provided: "The Policy is delivered in North Dakota and is governed by its laws." The Corporation was a member of the Association and had been participating in the Association's insurance plan since February 15, 1972.

Swanberg was a full-time employee of the Wilson Corporation and, on September 16, 1975, began participating in the group health insurance program offered in the policy issued to the Trust by Mutual. Swanberg received a group information card which provided in bold face type:

"Benefits are subject to policy provisions and limitations including coordination of benefits. This is a partial description of benefits not a guarantee of payment."

Swanberg's employment with the Wilson Corporation was involuntarily terminated on November 21, 1975, and, according to the terms of the policy, his eligibility for and participation in the group insurance program was also terminated on that date. Mutual did not send Swanberg notice of any election available to him to maintain his group insurance after his termination from employment.

Plaintiff, as administrator of Swanberg's estate, filed a claim with Mutual for certain hospital and medical expenses incurred by Swanberg from December 29, 1975, through January 5, 1976. Mutual denied the claim but admitted that, if Swanberg were still covered by the group policy, Mutual would pay $8917.80 of the expenses claimed.

Plaintiff and Mutual both filed motions for summary judgment. The trial court denied Mutual's motion and granted summary judgment for plaintiff in the amount of $8917.80. Mutual has appealed.

Opinion

Mutual first contends that the trial court erred in granting summary judgment for plaintiff because Illinois law is not applicable to Mutual's group policy and section 367.1 of The Illinois Insurance Code cannot be applied retroactively.

The insurance policy expressly states that it is to be governed by the laws of North Dakota, and defendant maintains that the contractual choice of law provision should be given effect. Defendant's position is supported by *Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 322 N.E.2d 454, the leading case in this State regarding contractual choice-of-law provisions. *Hofeld* involved a choice-of-law provision in a group health and accident insurance policy, which had been issued and delivered in Georgia by an Ohio insurance corporation to a Georgia organization. The plaintiff in *Hofeld* was an Illinois resident who sought a declaratory judgment that certain insurance coverage remained in effect although the insurance company had stopped making payments of benefits on the ground that the plaintiff had made material fraudulent misrepresentations in his application for an optional disability income privilege. The plaintiff had continued to pay his premiums until his death at which time the administrator of his estate was substituted as plaintiff. In holding that Georgia law was applicable, the court stated:

"The prevailing view is that a choice of law made in the basic group policy will be honored by the courts, particularly where that selection is the State of the group policyholder. We believe that to be the better view, and the one to be followed in this State so long as the particular statutory provision to be applied does not conflict with the public policy of this State, and so long as the certificate received by the insured does not contain conflicting provisions." 59 Ill. 2d 522, 532, 322 N.E.2d 454, 460.

The court cited Comment (h) to section 192 of the Restatement (Second) of Conflict of Laws (1971) in explaining the reasoning underlying its decision. Comment (h) states that choice-of-law provisions in group life insurance policies are more likely to be given effect than those in individual life insurance policies because the party who procures the master policy is usually in a better bargaining position, thus minimizing the likelihood that the choice-of-law provision in a group policy would be of "a 'take-it-or-leave-it' character." The *Hofeld* court found Comment (h) to be equally applicable to group health insurance policies. 59 Ill. 2d 522, 529, 322 N.E.2d 454, 458.

The court in *Hofeld* also adopted the reasoning of the United States Supreme Court expressed in *Boseman v. Connecticut General Life Insurance Co.* (1937), 301 U.S. 196, 81 L. Ed. 1036, 57 S. Ct. 686, which involved a group policyholder from Pennsylvania, a Connecticut insurer

and an insured employee from Texas. The court concluded that its application of Pennsylvania law was supported "not only by the making and delivery of the contract of insurance in that State, the declaration in the policy that Pennsylvania law shall govern and petitioner's acceptance of the insurance according to the terms of the policy but also by the purpose of the parties to the contract that everywhere it shall have the same meaning and give the same protection and that inequalities and confusion liable to result from applications of diverse state laws shall be avoided." 301 U.S. 196, 206, 81 L. Ed. 1036, 1042, 57 S. Ct. 686, 691.

Plaintiff maintains that *Boseman* should not apply because it is an older case and because two recent cases, *John Hancock Mutual Life Insurance Co. v. Schroder* (5th Cir. 1965), 349 F.2d 406, and *Nelson v. Aetna Life Insurance Co.* (W.D. Mo. 1973), 359 F. Supp. 271, have held to the contrary. However, it is clear that the *Hofeld* court intended to adopt the *Boseman* rationale, for it rejected out-of-hand the two cases cited by plaintiff, noting that: "*Boseman* was criticized in *John Hancock Mutual Life Insurance Co. v. Schroder* [citation] and in *Nelson v. Aetna Life Insurance Co.* [citation], but it has never been overruled." 59 Ill. 2d 522, 530, 322 N.E.2d 454, 458.

■■ Applying the choice of law principles expressed in *Hofeld* and *Boseman*, we conclude that the law of North Dakota, not Illinois, governs the policy here in question. The parties expressly chose the law of North Dakota, the policy was delivered in North Dakota, and the trust established for purposes of providing the insurance was accepted in North Dakota and similarly calls for the application of North Dakota law. That the trustee is from Minnesota does not compel the automatic application of Minnesota law, as plaintiff suggests. As was pointed out in *Hofeld*, the choice of law found in the policy is most likely the real, negotiated and mutual choice of the parties and, in the interest of uniformity and predictability, should be given effect, if possible.

Relying on *Hofeld* and *Thieme v. Union Labor Life Insurance Co.* (1956), 12 Ill. App. 2d 110, 138 N.E.2d 857, plaintiff further urges that the information certificate is part of the total insurance contract and that, because it was delivered to Swanberg in Illinois, the contract itself was delivered here. In *Thieme*, the master policy contained no choice-of-law provision and differed from the individual's certificate in several respects. The court there held that Illinois law was applicable in the absence of a provision to the contrary in the master policy and that under Illinois law the certificate was considered a part of the contract. The court nevertheless acknowledged the preference given to a contractual choice of law and noted that the United States Supreme Court had held in *Boseman* that the place of delivery of the certificate was not part of the insurance contract for the purpose of determining the applicable law

where the master policy contained a choice-of-law provision. Under *Hofeld*, the information certificate is a determining factor only if it contains a provision which conflicts with the master policy. No such conflict exists here, where the information card was made subject to the provisions of the master policy, and the choice-of-law provision of the master policy therefore prevails.

■ Plaintiff contends, nonetheless, that enforcing the choice-of-law provision in this instance would violate State policy as expressed in section 367.1, a result which would be contrary to the holding in *Hofeld*. Section 367.1 was added as an amendment to The Illinois Insurance Code and provides:

"This General Assembly is cognizant of the fact our nation is currently in an economic recession and wishes to alleviate the hardships brought on by this crisis with respect to the people of Illinois. It is the intent of this General Assembly, recognizing the temporary nature of the recession, that this Section shall be effective only until July 1, 1977.

No policy of group accident or health insurance may be delivered in this State unless it provides for insurance coverage for a period not to exceed 6 months from the termination date for any employee member or such employee's family as were previously insured under the provisions of a group policy at the same premium rate previously charged for membership under such group policy.

The termination date shall be when the employee has been fired, layed off or the day employment has otherwise been involuntarily terminated, or such later date as is established by the provisions of the group policy.

An employer of any employee insured under any policy affected by this Section shall give notice of the termination of employment of such employee to the insurance company issuing such policy; which notice shall state the said employee's last known place of residence.

Said notice shall not be given more than 10 days prior to the termination date or more than 10 days after the termination date. Within 10 days of the date of receipt of a notice from the employer, the said insurance company, by certified mail, shall give notice to the said terminated employee at his last known place of residence that the policy may be continued for a period of 6 months and such notice shall set forth (a) a statement of election to be filed by the employee to continue such insurance coverage, (b) the amount of monthly premium and (c) instructions as to the return of the election form to the insurance company issuing such

policy within 10 days of the mailing thereof. If the employee elects to continue such coverage then such election shall be made within 10 days to the insurance company by mail as provided hereinabove and such coverage shall relate back to the termination date. If the employee elects to be covered during the continuation period it shall be the obligation of the employee to pay the monthly premium directly to the insurance company issuing the insurance policy or otherwise as directed by the insurance company.

The annual renewal or extension of any group insurance policy affected by this Section shall be deemed to be the issuance of a new policy or contract of insurance." Ill. Rev. Stat. 1975, ch. 73, par. 979.1.

The express intent of the General Assembly is to alleviate hardships during difficult economical times by allowing persons to continue their insurance benefits at the same rates for up to six months after the termination of their employment. This obviously allows a transition period during which an individual may seek other insurance or join another insurance group without suffering from either a gap in coverage or an increase in premiums. It is at the election of an individual that coverage is continued, and it is the obligation of the individual to pay his own premiums. The legislature acknowledged the temporary nature of the relief it was providing and made the section effective only from October 1, 1975, to July 1, 1977.

Although the policy itself provides for a similar extension of coverage, the terms are different from those required by section 367.1. The policy allows a conversion to individual coverage effective on the date of termination of employment, provided the insured notifies Mutual within 31 days of the termination and tenders the first quarterly insurance premium at individual rates. The conversion privilege accrues under the policy if the insured has been insured by the group for at least three months. The statute, on the other hand, provides for an extension of group coverage with no increase in premiums regardless of the length of time of the original coverage, and with the employer and insurer bearing the responsibility for giving notice.

Because of the differences in provisions for insurance benefits after termination of employment, to find that the choice-of-law provision must yield to the legislative policy expressed in the statute would require a retroactive application of the amendment that would, in effect, alter the terms of the insurance contract that had been in effect for two years before the statute was enacted. Such a result would be contrary both to existing principles of statutory construction and to the Constitution of the State of Illinois.

The statute itself does not provide that it shall be applied

retroactively or prospectively. However, it is a rule of statutory construction in this State that, absent express language imposing a retroactive application, a legislative amendment must be construed as prospective. (*People ex rel. Baylor v. Bell Mutual Casualty Co.* (1973), 54 Ill. 2d 433, 440, 298 N.E.2d 167, 171; *New York Life Insurance Co. v. Murphy* (1944), 388 Ill. 316, 58 N.E.2d 182.) It has also been held that amendments which pertain to substantive rights must be applied prospectively. (See *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 187, 161 N.E.2d 258, 262.) Moreover, the language of the statutory amendment itself is prospective. It refers to policies which "may be delivered" rather than those which "have been delivered," and it contains a provision which acts to bring existing policies within its rule. The last paragraph of section 367.1 reads: "The annual renewal or extension of any group insurance policy affected by this Section shall be deemed to be the issuance of a new policy or contract of insurance."

■ The retroactive application of section 367.1 would effect a change in the obligations of the parties under the existing policy. Such a result is prohibited by article I, section 16 of the Constitution of the State of Illinois of 1970, which provides in pertinent part: "No ex post facto law, or law impairing the obligation of contracts * * *, shall be passed." Article I, section 16 is clearly a limitation on the power of the legislature. Therefore, even if it had intended a retroactive application of the amendment, the legislature did not have the power to achieve that end because of the constitutional limitation found in article I, section 16.

Plaintiff maintains that changes in the policy were contemplated because Mutual retained the right to make periodic amendments and endorsements and that section 367.1 is therefore applicable. The statute provides that the annual renewal or extension of a group policy will be considered the issuance of a new policy or contract of insurance, thereby bringing existing insurance policies within its scope. However, no amendment was made to the policy between the effective date of the statute and the date on which Swanberg's claim arose. Furthermore, even if the anniversary date of the policy is seen as a renewal or extension of it, the last anniversary had occurred on July 15, 1975, before the statute was enacted.

Statutes which are in effect at the time a policy is issued are controlling. (*Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 854, 362 N.E.2d 1355, 1358, citing 12 Appleman, Insurance Law and Practice §7041 (1943).) The statutory provision upon which plaintiff relies was neither enacted nor in effect at the time the master policy was issued. At the time the policy was issued, neither North Dakota nor Illinois had a statute requiring the optional extension of group insurance after an employee's termination. Consequently, giving

effect to the choice of law provision in the master policy will not result in a conflict with the policy of this State and, under *Hofeld*, North Dakota law, the contractual choice of the parties, will be applied.

The second issue raised by Mutual is that summary judgment was improperly granted to plaintiff and should have been entered, instead, on behalf of Mutual. We agree. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." (Ill. Rev. Stat. 1977, ch. 110, par. 57(3).) Where no triable issue of fact exists, a movant is entitled to summary judgment as a matter of law. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.) We are in agreement with the parties, that there are no material issues of fact and that summary judgment is proper in this case. We find, however, that under *Hofeld*, the choice of the law of North Dakota expressed in the master policy is entitled to recognition by our courts. There being no North Dakota law which required an extension of insurance coverage after the termination of Swanberg's employment, plaintiffs are not entitled to recovery.

Accordingly, the judgment for the plaintiff is reversed and summary judgment is entered in favor of Mutual.

Judgment reversed; judgment entered.

SULLIVAN, P. J., and LORENZ, J., concur.