**Lori KUBES, Plaintiff,**

v.

**AMERICAN MEDICAL SECURITY, INC., and United Wisconsin Life Insurance Company, Defendants.**

Civ. No. 94–4125–JLF.

United States District Court, S.D. Illinois, Benton Division.

June 15, 1995.

Patrick J. Hewson, Carbondale, IL, for plaintiff.

Michael F. Dahlen, Feirich, Mager, Green, Carbondale, IL, for defendants.

### MEMORANDUM AND ORDER

FOREMAN, District Judge:

Before the Court is the defendants' Motion for Summary Judgment (Document No. 15). For the reasons stated more fully below, the Court finds that the motion should be granted insofar as it relates to the claims raised in the plaintiff's complaint.

### I. FACTS

The basic facts of this case are not in dispute. The plaintiff, Lori Kubes, was covered under a group health insurance policy through her employer, the Center for Comprehensive Services in Carbondale, Illinois. While the plan was in effect, the plaintiff incurred medical expenses related to infertility testing and treatment. The defendants refused to pay the plaintiff's claims, asserting that such charges are excluded from the insurance plan's coverage.

The insurance policy was issued by defendant United Wisconsin Life Insurance Co. to a multi-employer trust in Alabama. Defendant American Medical Security is the administrator of the insurance policy and the trust. A master policy was issued to the Alabama trust and remains in the trust's possession. The plaintiff was given a certificate of coverage.

The cover page of the master policy identifies the policyholder as the "Trustee of American Medical Security Trust." It further states, *inter alia,* that "[t]he Policy is subject to the laws of the jurisdiction where the Policy is issued, shown in the Policy Situs above." The policy situs is identified as Birmingham, Alabama.

Under the heading "Policy Provisions," the document states that "[t]he Employee certificate of group insurance is hereby attached to and is made part of the Policy. All provisions in the certificate shall hereby apply to the Policy. . . ." The remainder of the document sets forth specific provisions governing the minimum participation requirements for employers, special requirements for employee and dependent insurance, termination of the participating employer, and termination of the policy. It does not list any of the actual benefits provided by the various insurance plans.

The employee certificate sets forth a detailed description of the benefits under the various insurance programs, as well as enrollment and termination provisions, claims information, and other general provisions. Certain provisions pertinent to this action are highlighted below.

The definitions section of the certificate states that "POLICY means the group insurance contract under which coverages are provided to Insured Persons. This certificate of group insurance is evidence of that contract." The "General Provisions" section of the certificate includes the following:

**CERTIFICATE**

We will issue a certificate to each insured Employee. It summarizes Your rights and benefits under the Policy.

**ENTIRE CONTRACT; CHANGES**

The entire contract of insurance consists of the Policy, the Employer group application and Your enrollment forms.

. . . . .

**CONFORMITY WITH STATE STATUTES**

If a Policy provision does not conform to applicable provisions of State law, the Policy is hereby amended to comply with such law.

Under the "Limitations and Exclusions" heading of the health insurance plan, the certificate states:

Except as may be provided otherwise by a rider attached to the certificate, the Policy does not cover:

. . . . .

20. Sex change operations and complications from that surgery; artificial insemination; in-vitro or in-vivo fertilization; testing, treatment or medication for the primary purpose of achieving conception; infertility and impotency testing and treatment; elective abortion; voluntary sterilization; reversal procedures of sterilization; birth control pills and supplies[.]

The plaintiff filed this action seeking payment for her medical expenses for infertility treatment. She contends that the policy's exclusion for infertility benefits is prohibited by § 5/356m of the Illinois Insurance Code. 215 Ill.Comp.Stat. § 356m (1993).

The defendants filed a counterclaim seeking repayment of $1,095.99 that was mistakenly paid to a St. Louis hospital for infertility treatments. The defendants have moved for summary judgment, arguing that § 5/356m is inapplicable and, therefore, the defendants are entitled to judgment as a matter of law.

## II. ANALYSIS

A court may grant summary judgment only if the party seeking summary judgment demonstrates that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 841 F.2d 1347, 1354 (7th Cir.1988). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988). Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party

fails to respond to the motion. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1222 (7th Cir.1984).

When the parties do not dispute the factual basis of a motion for summary judgment, the court's only inquiry is whether judgment should issue as a matter of law. *Woods v. City of Michigan City,* 940 F.2d 275, 277 (7th Cir.1991). Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dep't of Air Force,* 804 F.2d 428, 430 (7th Cir.1986).

The sole issue before the Court is whether the Illinois statute regarding infertility treatments is applicable to the defendants' insurance policy. The defendants argue that the policy is governed solely by Alabama law because that is where the policy was delivered to the multi-employer trust. The policy itself states that it is "subject to the laws of the jurisdiction where the Policy is issued[,]" which the policy identifies as Birmingham, Alabama. The plaintiff argues that Illinois law should apply because while the master policy was delivered to the trust in Alabama, the certificate was delivered to the plaintiff in Illinois.

In the absence of a choice of law provision in the insurance policy itself, Illinois courts have determined the applicable state's law by considering "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a relationship to the general contract." *Hofeld v. Nationwide Life Ins. Co.,* 59 Ill.2d 522, 528, 322 N.E.2d 454, 457–58 (1975). Where the contract itself sets forth the applicable law, however, that choice of law "should be given effect, if possible." *Swanberg v. Mutual Benefit Life Ins. Co.,* 79 Ill.App.3d 81, 85, 34 Ill.Dec. 624, 627, 398 N.E.2d 299, 302 (1st Dist.1979).

Group insurance policies may present special problems because the master policy is issued to a group policyholder, such as an employer, while certificates are issued to the participating insureds, i.e., covered employ-

ees. Illinois courts have held that "[t]he master policy is the primary contract and must first be looked to in construing group insurance policies." *Hofeld,* 59 Ill.2d at 527, 322 N.E.2d at 457. A certificate is generally considered to be only "evidence of the insurance of the employee." *Boseman v. Connecticut Gen. Life Ins. Co.,* 301 U.S. 196, 203, 57 S.Ct. 686, 690, 81 L.Ed. 1036 (1937). However, Illinois courts have recognized that "where the certificate varies in substance from the terms of the master policy it forms a part of the contract of insurance." *Thieme v. Union Labor Life Ins. Co.,* 12 Ill.App.2d 110, 114, 138 N.E.2d 857, 859 (1st Dist.1956); *see also Hofeld,* 59 Ill.2d at 527, 322 N.E.2d at 457 (stating that if the certificate "contains provisions conflicting with those in the master policy, the certificate normally will be held to control. Courts have so held either under the theory that the certificates are a part of the total contract under the particular language of the certificate or on the theory of estoppel.").

The Illinois Supreme Court applied these rules to the conflict of laws question involving a group policy as follows:

> The prevailing view is that a choice of law made in the basic group policy will be honored by the courts, particularly where that selection is the State of the group policyholder. We believe that to be the better view, and the one to be followed in this State so long as the particular statutory provision to be applied does not conflict with the public policy of this State, and so long as the certificate received by the insured does not contain conflicting provisions.

*Hofeld,* 59 Ill.2d at 532, 322 N.E.2d at 460.

The plaintiff acknowledges that the master policy issued in this case provides that Alabama law is to govern. However, the plaintiff argues that the certificate she received contains a conflicting provision because it states, in the general provisions section, that "[i]f a Policy provision does not conform to applicable provisions of State law, the Policy is hereby amended to comply with such law."

The Court agrees with the plaintiff that this provision is controlling and arguably provides that the policy shall conform to the laws of Illinois. The certificate issued in this case is not of the type that merely provides evidence of the insured's coverage. Rather, the certificate contains the substantive provisions of coverage—i.e., benefit schedules, claims procedures, etc.,—that are not expressed in the master policy itself. Although the certificate states that it "is evidence of" the insurance contract and that it "summarizes Your rights and benefits under the Policy[,]" the certificate as a whole was expressly incorporated into the master policy through a provision in the master policy stating that: "[t]he Employee certificate of group insurance is hereby attached to and is made part of the Policy. All provisions in the certificate shall hereby apply to the Policy...."

The language in the certificate regarding conformity with state law arguably could be construed as referring to the state of Alabama, which is the situs of the policy and the trust. However, the language may also be construed as referring to the state in which the insured resides. "Under Illinois law, 'if a provision of an insurance policy is ambiguous, the provision must be construed in favor of the insured.'" *Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 478 (7th Cir.1994) (citing *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981)). Because of the ambiguity in the certificate, the Court construes the language as requiring that the policy conform to Illinois law.[1]

The Illinois law at issue here provides that: No group policy of accident and health insurance providing coverage for more than 25 employees that provides pregnancy related benefits *may be issued, amended, delivered, or renewed in this State* after the effective date of this amendatory Act of 1991 unless the policy contains coverage for the diagnosis and treatment of infertility including, but not limited to, in vitro fertilization, uterine embryo lavage, embryo transfer, artificial insemination, gamete intrafallopian tube transfer, zygote intrafallopian tube transfer, and low tubal ovum transfer.

215 Ill.Comp.Stat. § 5/356m (1993) (emphasis added). As highlighted in the text, however, the law applies only to insurance policies issued, amended, delivered or renewed in Illinois.

The plaintiff argues that the policy was delivered in Illinois because the certificate was delivered here. However, under Illinois law, it is clear that the certificate alone does not constitute the policy. Under *Hofeld* and *Thieme*, the certificate may be part of the total contract and will be controlling in the face of a conflict with the terms of the master policy. Indeed, in this case, the master policy itself provides that the certificate is part of the policy. However, delivery of a part does not constitute delivery of the whole.

A federal district court in Maine was faced with facts substantially similar to those in the case at bar. *Libby v. Transamerica Occidental Life Ins. Co.*, 737 F.Supp. 114, 116 (D.Me.1990). The group policy was issued and delivered in Ohio but certificates were delivered to individual employees in their home states. The certificates, which were considered a major portion of the insurance contract, also were delivered to the employer as part of the master policy. To determine whether Maine law applied, as requested by an insured residing in that state, the court was required to determine whether the policy was "executed, delivered, issued for deliv-

---

1. The Court of Appeals of Kansas reached a similar result in *Frasher v. Life Investors Ins. Co. of Am.*, 14 Kan.App.2d 583, 585–86, 796 P.2d 1069, 1071 (1990). Although Kansas law ordinarily would apply to the case because the master policy was delivered to the group policyholder in Kansas, the court applied Missouri law because the certificate delivered to a Missouri resident provided that "[a]ny provision of this Policy which, on its Effective Date, is in conflict with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes." The court acknowledged that the term "insured" could arguably refer to the group policyholder in Kansas. However, the court found it more reasonable to conclude that the term referred to the individual whose life was insured under the policy. In light of the ambiguity, the court concluded that Missouri law would be applied.

ery, renewed, modified or amended in this State...." In holding that Maine law was inapplicable, the court provided the following analysis:

> Insurance here is plainly effected by the master policy, including the certificates. The master policy sets forth standard contract language, in which Defendant Transamerica agrees to pay the benefits described in the policy, that is, in the certificates, in return for certain consideration from the policyholder, Plaintiff's employer.... The certificates alone do not establish any rights and obligations. While the certificate describes when the insurance starts, ... receipt of the certificate does not trigger coverage in any sense.... The master policy and the certificates are interdependent, neither effecting coverage without the other. The record shows that the two together were delivered to and are on file at Plaintiff's employer's offices in Ohio. There is no suggestion in the record that the master policy, without which there is no contract, was executed, delivered, issued for delivery, renewed, modified or amended in Maine. Therefore, the Maine conversion statute does not apply.

*Id.* (citations omitted). The Court finds this analysis highly persuasive. Therefore, the Court finds that the insurance policy at issue in this case was delivered in Alabama, where the master policy was delivered. Although the plaintiff received a certificate in Illinois and the certificate was incorporated as a major part of the insurance policy, the certificate itself cannot be said to be the insurance policy.[2]

Based upon this analysis, the Court agrees that even though the insurance policy covered an Illinois resident, the defendants were not required to include coverage for infertility treatment. Accordingly, the Court concludes that the defendants are entitled to judgment as a matter of law on the plaintiff's complaint for payment of her medical expenses for infertility treatment.

This ruling also governs, but does not fully dispose of, the defendants' counterclaim. The defendants have alleged that they were improperly induced to pay $1,095.99 to St. Luke's Hospital for fertility treatments. More specifically, their counterclaim alleges that the defendants "were informed that certain services provided by St. Luke's to the plaintiff were unrelated to fertility treatments; however, upon subsequent investigation, defendants learned that these charges were related to infertility treatments for which there is no coverage under said group policy." The court's ruling above sustains the defendants' claim of non-coverage. However, the defendants have presented no evidence to support the allegation that $1,095.99 in payments were made to St. Luke's for this type of treatment. The Court, therefore, finds that further proceedings are necessary to resolve that issue.

### III. SUMMARY

For the foregoing reasons, the Court hereby **GRANTS** the defendants' motion for summary judgment (Document No. 15) as it relates to the plaintiff's complaint—i.e., her claim for payment of medical expenses for infertility treatment. This ruling, however, does not fully dispose of the defendants' pending counterclaim. The Clerk of the Court, therefore, shall not enter judgment until after the counterclaim is resolved.

**IT IS SO ORDERED.**

---

2. The plaintiff relies upon § 5/355a(2)(a) to argue that the Illinois Insurance Code defines the term "policy" as "all or any part of the forms constituting the contract between the insurer and the insured, including the policy, certificate, subscriber contract, riders, endorsements, and the application if attached, which are subject to filing with and approval by the Director." 215 Ill.Comp.Stat. § 5/355a(2)(a) (1993). However, this definition is applicable only to that particular section of the code. *Id.* § 5/355a(2). The general definition of policy is contained in § 5/2,

which states that "'Policy' means an insurance policy or contract and includes certificates of fraternal benefit societies, assessment companies, mutual benefit associations, and burial associations." *Id.* § 5/2(n). This definition was in effect at the time that *Hofeld* and *Thieme* were decided and, therefore, their interpretation of the term is binding. Moreover, even if § 5/355a(2)(a) was applicable to the pending claim brought under § 5/356m, there is no indication that the certificate delivered to the plaintiff was a form that is "subject to filing with and approval by the Director."