Lucille COLEMAN, Plaintiff-Appellant,

v.

ÆTNA LIFE INSURANCE COMPANY, a corporation, Defendant-Appellee.

No. 12255.

United States Court of Appeals Seventh Circuit.

Oct. 31, 1958.

Rehearing Denied Dec. 31, 1958.

Hugh M. Matchett, James F. Noone, Chicago, Ill., for appellant.

Thomas J. Johnson, Jr., William T. Hart, Chicago, Ill., for defendant-appellee, Defrees, Fiske, O'Brien, Thomson & Simmons, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff sued to recover $5,000 on a certificate of life insurance issued to her husband, L. W. Coleman, an employee of National Malleable & Steel Castings Company, at Chicago, Illinois (hereinafter called "National Malleable") under a group life insurance policy issued to it by Aetna. The certificate was issued December 1, 1955, and the insured, L. W. Coleman, died January 14, 1956. The suit was defended on the ground that the insured, in his application for coverage under the group policy, made material misrepresentations which, in the alternative, either materially affected the acceptance of the risk, or the hazard assumed by the Company, or which misrepresentations were made with actual intent to deceive.

At the conclusion of all of the evidence, defendant moved for a directed verdict on which the trial court reserved ruling. The jury found in favor of plaintiff. Thereafter, the trial court granted defendant's motion for judgment in favor of defendant notwithstanding the verdict.

Insured was a male nurse and a graduate of Chicago Nursing School. Prior

to his employment by National Malleable, he served as a medical attendant at Indiana University. He walked with a pronounced limp, the effect of a stiff right hip.

On December 15, 1952, when insured was employed by National Malleable, there was available to employees of insured's classification coverage, either of two group life insurance policies. One plan was known as the hourly plan and provided $1,000 worth of life insurance without the contribution of a premium by the employee. The other was known as the salary plan but required contribution of premiums by the employee. The insured became eligible to participate under either plan on March 1, 1953, and elected to come under the hourly insurance plan. On November 14, 1955, approximately two months before his death, he applied for insurance under the salary plan which provided $5,000 coverage, and he paid the necessary premium. This insurance was issued without medical examination.

Pursuant to the terms of the life insurance policy, the insured, L. W. Coleman, submitted "evidence of insurability" signed by him. In answer to question No. 2, he stated he was in good health. In answer to the question "Is an operation contemplated or has one been recommended by a physician?" the answer was "No." In answer to question No. 5 "Has there been an examination or treatment by any physician or practitioner within the past 5 years?" he answered that he had been treated from February 10 to February 18, 1955 for flu, and had effected a complete recovery. In answer to the question as to whether he had been a patient in any hospital or sanitarium he answered that he had been hospitalized for fracture of the left femur in 1919 with a good recovery.

The insured, L. W. Coleman, died on January 14, 1956 of tuberculosis. Evidence produced by defendant disclosed that insured was hospitalized in 1919 for tuberculosis of the hip, and a hip fusion was performed. The history of tuberculosis of the hip in childhood was disclosed by insured to Dr. Hamilton in 1954. The evidence also showed that insured was totally disabled from work from April 12 to April 26, 1954, during which time he was treated by Dr. Hamilton for virus or atypical pneumonia. On May 10, 1954, insured was examined and treated for complaints referable to the prostate gland. On February 14, 1955, insured was examined and treated for acute urinary infection. On February 18, 1955, Dr. Hamilton diagnosed insured's condition as pyuria and pyelitis at which time plaintiff was disabled. On March 14, 1955, there was further examination and treatment with further treatments by Dr. Hamilton on March 30, 1955, April 13 and April 15, 1955, with diagnosis of urethritis. In May, 1955, insured was examined and treated by Dr. Sapienza who made a diagnosis of epididymitis, and there were examinations thereafter every week or every other week to the time of final hospitalization. Dr. Herbert Lakin was consulted and recommended biopsy or possibly removal of the gland. Insured stopped working on December 23, 1955 and was hospitalized on January 2, 1956 at Garfield Park Hospital. Three days later he was transferred to Municipal Tuberculosis Sanitarium. Insured died on January 14, 1956.

Plaintiff's principal contention is that the group insurance policy was an Ohio contract and is governed by Ohio law; that under Ohio law, the "Evidence of insurability" is neither an application nor any part of the policy and cannot be considered in this case. Also, that under Ohio law, any person holding a life insurance policy is entitled to be furnished with a copy of the application which was not done in the instant case. Plaintiff cites Ohio cases to the effect that delivery of such a copy to attorneys for the beneficiary after the insured's death, is not sufficient.

The application for the group insurance policy was signed in Cleveland, Ohio, and was accepted by defendant Insurance Company in Hartford, Con-

necticut. The policy itself is silent as to what law governs. However, plaintiff's application for coverage was executed by him in Chicago, Illinois where he was employed by National Malleable. The certificate of insurance evidencing that he was covered by the group policy, was delivered to insured in Chicago, Illinois, and his contribution of premium was made there. Plaintiff's action herein is based upon the plaintiff's rights as a beneficiary under the group policy.

■ Plaintiff's pleadings were drawn with the idea that Illinois law was applicable. The suit was commenced by plaintiff in the Municipal Court of Chicago and was removed by defendant to the United States District Court. The trial in that Court was on the theory that Illinois law applied.

A pertinent Illinois authority is Thieme v. Union Labor Life Ins. Co., 1956, 12 Ill.App.2d 110, 138 N.E.2d 857. There a master policy was executed in Washington, D. C., and delivered to an International Union located in Missouri. The insured, a member of the Illinois local, received his certificate of insurance in Illinois and brought suit in that state. The question arose whether the laws of the District of Columbia, Missouri or Illinois covered an interpretation of the policy. The Court said, 12 Ill.App.2d at page 113, 138 N.E.2d at page 859:

> "In the case before us the master policy does not contain any provision setting forth the law applicable to an interpretation of the insurance contract. The certificate of insurance received by decedent was delivered to him by the defendant in this State. He became entitled to this by reason of his membership in the Local which had its office in this State. * * * We are of the opinion that under the conflict of laws doctrine in this State we are permitted to and should apply the law of Illinois to an interpretation of the contract. * * *"

We hold that in determining the issues of the case at bar, we are governed by Illinois law.

Another contention made by plaintiff is that defendant's exhibit 1 (Evidence of Insurability) was not an application for insurance and was inadmissible because not attached to the policy. The trial court ruled that this exhibit was the insured's application and overruled plaintiff's objection and admitted the exhibit.

■ The requirement for attaching applications to policies is contained in § 224 of the Illinois Insurance Code, Ill. Rev.Stat.1957, c. 73, § 836, applicable to "life insurance *other* than industrial, group or annuities." There is, in fact, no requirement in Illinois law that applications for coverage under group life insurance policies be attached to those policies. Anderson v. John Hancock Mutual Life Ins. Co., 316 Ill.App. 338, 341 and 343, 45 N.E.2d 39. There would seem to be adequate reasons for omitting this provision for one group policy might cover thousands of insured employees located in several states. Also, there is no justification in the Illinois Insurance Code for the further extension sought by plaintiff, that the application of the employee be attached to the certificate issued to him under the group policy. We hold that defendant's exhibit 1 was properly received in evidence.

■ Plaintiff also relies upon a provision in the group insurance policy which provides: "No written statement made by any insured employee shall be used in any contest unless a copy of the instrument is or has been furnished to such employee or his beneficiary." We think there was a sufficient compliance with this provision when defendant served its answer setting forth the affirmative defense of misrepresentation and attached thereto a copy of insured's application for coverage under the group policy. There is no requirement in the Illinois Insurance Code or under the provisions of the policy that requires a copy to be furnished at an earlier date.

■ Section 154 of the Illinois Insurance Code (§ 766, Ch. 73, Ill.Rev.Stat. 1957) provides, in part:

"No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company."

There have been conflicting Illinois decisions interpreting the word "or". In Jessen v. Aetna Life Ins. Co., 209 F.2d 453, 456–458, in a well-reasoned opinion written by the late Judge Lindley, we held the word "or" was to be read as it is written. We said:

"We are of the opinion, however, that the better reasoned Illinois decisions clearly support defendant's construction of the statute to the effect that proof that a representation is false and material constitutes a sufficient defense, without proof of intent to deceive."

The latest decision of Illinois courts is Campbell v. Prudential Insurance Company, 1958, 16 Ill.App.2d 65, 74, 147 N. E.2d 404, 409, wherein the majority adopted the reasoning of this Court in the Jessen case holding that proof of intent was not necessary.

■ However, in the case at bar, we think the proof established the insured intended to deceive the defendant. He was a male nurse. He first elected to come under the hourly plan, but after an extended period of treatment involving complicated disorders of the genital urinary tract, he applied for the larger coverage and did not mention his ailments which, of necessity, must have been uppermost in his mind. The insured intentionally concealed the true state of his health. The proof is also clear that had the insured revealed the medical facts established by the evidence in this case, his application for coverage would have been rejected. The facts concealed by the insured materially affected the acceptance of the risk.

Judgment affirmed.