FEDERAL LIFE AND CASUALTY CO., Plaintiff-Appellant, v. LISLE et, Defendants-Appellees.

Ohio Appeals, Seventh District, Columbiana County.

No. 797. Decided March 30, 1960.

556

*Messrs. Brookes, Lynch & McDonald,* for plaintiff-appellant. *Mr. Lawrence S. Smith, Mr. William E. Dunlap,* and *Messrs. Moore & Moore,* for defendants-appellees.

MCO 11-2-60. For further history see *Omnibus Index* in bound volume.

DONAHUE, J. Plaintiff-appellant filed an action in the common pleas court asking cancellation of a "Reducing Term" policy of life insurance, after the death of the insured. Defendants-appellees filed a cross-petition for the proceeds of the insurance. The court, without intervention of a jury, rendered judgment for appellees on both petitions.

The deceased-insured, was approached by appellant with regard to insurance in connection with a real estate mortgage. He decided he wanted the policy which would cover not only the balance due on his mortgage but would also include an additional amount with his spouse as beneficiary. The insured did not sign the original application nor answer any of the questions involved. It was signed by his wife, who answered at least part of the questions. These answers were filled in by the agent of plaintiff. Insured was then asked to secure two physical examinations by competent doctors. This was done. The application showed no diabetes. The medical reports showed no diabetes. There is evidence of the existence of this condition at that time. Appellant based its case on fraud in the concealment of this condition. The agent, upon instructions, then brought the policy to the insured and advised him that the premium had been up-rated because of overweight. At this point the policy was complete except for the signing, by insured, of an attached endorsement, accepting the up-rated premium. The agent showed this endorsement to the insured, and had him sign it. He then took the policy back, telling the insured that he would take it back to his own office in Toledo and then deliver it to the appellee-bank which held the mortgage. This was also done. The bank, thereafter, forwarded the annual premium to the appellant's office and collected from the insured on a monthly basis, which set-up cost the insured about eight percent more than the annual premium.

This entire case revolves around the question of whether or not the appellant is estopped under Section 3911.04, Revised Code, from asserting the defense of fraudulent answers in securing the issuance of the policy.

"Every life insurance company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects to do so is estopped from denying the truth of any such application or other document, so long as it is in default for such copy. In case such company neglects for thirty days after demand made therefor, to furnish such copies,

it is forever barred from setting up as a defense to any suit on the policy, any incorrectness or want of truth of such application or other document.''

Appellant sets forth his questions of law:—

''1. If a completed policy of insurance, having attached to it a copy of all documents affecting its validity, is handed to the assured, is accepted by him in writing upon an attached document, is available to him then and there for examination, then is handed by him to another for deposit elsewhere, have the requirements of Section 3911.04, Revised Code, been complied with?

''2. May a beneficiary, herself guilty of fraud in the procurement of a policy, avail herself of the protection of Section 3911.04, Revised Code?

''3. Is it not the real objective or purpose of Section 3911.04, Revised Code, to require that all documents making up the contract be incorporated in a single instrument available to the assured, and that the whole be delivered?

''4. In what sense is the word 'return' used in Section 3911.04, Revised Code?

''5. Is the meaning of the phrase 'person taking such policy' confined to the assured alone?''

Taking the last question first: The wording of the phrase ''person taking such policy'' is somewhat peculiar to Ohio. However, it seems to be perfectly plain. The avoidance of the terms ''insured'' and ''assured'' and the specific use of ''taking'' leaves no doubt in our minds. It can refer to only one person—the person making application for the policy. This is not necessarily the insured or even the assured. In this case it could mean only the insured, since he is the only person who was ''taking'' the insurance.

The fourth question raised as to the word ''return'' must be interpreted as part of the whole phrase. The statute says ''return with'' and is specifically referring to all papers, including the application for the insurance, which must be ''returned'' to the person taking the insurance at the same time as the policy is ''delivered'', and as part of such policy. It is obvious that the *returning* refers not to the policy but to such attached papers which are presumed to have been in the pos-

session of the person taking the policy when originally made out.

As to question number three, we cannot agree with this interpretation. The real purpose is to prevent an agent of the company from falsifying answers or at least slipping in answers of which the person taking would not be aware. It is a common practice for the agent to fill out these forms (as was done here). And it has been known, that an agent, in his zeal to make a sale, may answer questions on the form which he has not even asked. This practice made available to the insurer the defense of fraud because the form had been signed. Ordinarily we are bound by our signature even though we have not read the fine print or the written answers. This situation amounts to a fraud by the agent—but a fraud which is very difficult to prove.

And it was to prevent this very thing that the legislature adopted the extraordinary means of estoppel by statute. Estoppel under any circumstances is a harsh thing and reluctantly applied. It prevents, in effect, the telling of the truth. And estoppel by statute, therefore, must be regarded as an extremely serious matter.

Objection number two cannot be regarded by us very seriously. The beneficiary is not a party to the original contract. She answered questions for the convenience of the agent who knew exactly what he was doing. When he asked that she sign her husband's name, he was participating in her action. Furthermore, the company did not rely too much on that information since they required two medical examinations thereafter. It is safe to say that those examinations were considered more important than her answers.

That brings us to the first question, which actually is the important question. The agent here, from the testimony, handed this policy to the insured for one purpose and one purpose alone; to secure the signature on the up-rating endorsement. It appears that nothing was said about looking at or inspecting anything but the endorsement. When the signature was secured, the agent was in some haste to get his hands back on it again, and actually told the insured he had to take it back to Toledo before sending it to the bank. We cannot believe that these actions constituted a delivery of the policy together with

560

the attached papers to the insured as required by statute. Neither did subsequent delivery to the bank effect such delivery. The statute, being very specific, says "return * * * to the person taking * * *." It omits any reference to an agent, and by implication eliminates such delivery.

Summing up, this section of the code is to protect the insured and his beneficiaries insofar as possible and should be liberally interpreted.

Judgment of the common pleas court is, therefore, affirmed.

GRIFFITH, P. J., and PHILLIPS, J., concur.