**INDUSTRIAL LIFE INSURANCE COM-PANY, Appellant,**

v.

**The FIRST NATIONAL BANK OF PERRY-TON, Texas, Appellee.**

**No. 442.**

Court of Civil Appeals of Texas.

Tyler.

Dec. 18, 1969.

Archer & Baker, James G. Baker, Perryton, for appellant.

Allen, Allen & Gaines, Ronnie Gaines, Perryton, for appellee.

DUNAGAN, Chief Justice.

This is a suit on a credit life insurance policy. Suit was instituted by The First National Bank of Perryton, Texas, against Industrial Life Insurance Company of Dallas, Texas, to recover under two credit life insurance certificates issued to the insured debtor at the time of creation of his obligations to the bank. Trial was to the court, and upon presentation of the evidence, judgment was entered in favor of plaintiff,

The First National Bank, Perryton, Texas, for the face amount of the certificates, statutory penalty, and attorneys' fees. From this judgment, appellant (defendant below), Industrial Life Insurance Company, perfected its appeal, which is now before this Court. No findings of fact or conclusions of law were requested or filed.

Appellee's (plaintiff below) original petition alleges that on or about the 19th day of October, 1962, application was made by The First National Bank, Perryton, Texas, to Industrial Life Insurance Company, Dallas, Texas, for an annual renewable term group creditor life insurance policy providing insurance on the lives of debtors of The First National Bank. The insurance was to be applied to the indebtedness owing to The First National Bank, Perryton, Texas, in the event of debtor's death within the terms of the policy and any excess would be applied to a named beneficiary or the Estate of the debtor. Shortly thereafter, the application was approved by Industrial Life Insurance Company and Group Policy No. G–3118, dated the 19th day of October, 1962, was issued and has been continuously in effect.

In April and May of 1967, one Wilbur Johnson borrowed $1,000.00 and $300.00, respectively, from The First National Bank, Perryton, Texas. Wilbur Johnson applied for credit life insurance from Industrial Life Insurance Company furnished by the bank but using an application form supplied by the insurance company. A portion of the application for credit life insurance reads as follows: "I certify that I am in good health." Two months after the issuance of credit life insurance to Wilbur Johnson, he died and death was attributed to arteriosclerotic heart disease and pulmonary emphysema. He had suffered from these conditions for many years.

It is undisputed that an annually renewable term credit life insurance policy was applied for by The First National Bank, Perryton, Texas, with Industrial Life Insurance Company; that such policy G–3118

dated the 19th day of October, 1962, was issued and has been continuously in effect since that date. It is further uncontroverted that Certificate of Group Life Insurance No. 461079 in the principal amount of $1,000.00 and No. 461089 in the principal amount of $300.00 were issued to Wilbur Johnson as the insured debtor under the foregoing group creditor life insurance policy.

It is also uncontroverted that the insured debtor died on June 15, 1967, about two months after the issuance of the first certificate of insurance, and about one month following the issuance of the second certificate of insurance. Following the insured debtor's death, the bank made claim for the payment of the certificates of life insurance on the insured debtor's life and that the Industrial Life Insurance Company denied the validity of the claim based on an alleged representation of good health on the part of the insured debtor. The premiums paid were tendered to the bank.

· The alleged representation of good health is contained on the first part of a four-part multiple application form for insurance supplied by the insurance company, such part being an IBM card. However, the loan officer who initiated and completed the loans upon which the group certificates of life insurance were issued to the debtor testified that his customary procedure was to request the debtor to sign on the designated line of the IBM card; that he had received no instructions to determine insurability of the debtor from the insurance company; that the only limitations upon insuring debtors was to determine their eligibility under the group policy; that the debtor be between the ages of 18 and 65; that the debtor sign the application form but the loan officer did not ask the debtor if he was in good health. The statement concerning good health was not read to the debtor and good health is not customarily an inquiry, because the insurance company has never instructed the bank to do so.

The appellant refused the claims under the subject certificates of Life Insurance No. 461079 and 461089 because of the misrepresentations of the insured's health status on the application. It is undisputed however that such statement, if made by the insured, was never furnished to the beneficiary or insured. Following the death of Johnson, Appellee timely made its claim under the policy. Appellee in due course denied the claim on the grounds of the misrepresentation of the debtor's health status on the application.

The sole point preserved by Appellant upon its appeal asserts that the judgment should be reversed because it is against the overwhelming weight of the evidence and is contrary to law because the debtor-insured in his application for credit life insurance made the representation that he was in good health when, in fact, he was not and knew that he was not in good health.

Appellee, in support of the judgment below, contends generally that the judgment should be affirmed because (a) the insurer waived the right to require eligible persons for insurance to furnish evidence of individual insurability and that all persons between the ages of 18 and 65 as eligible debtors were eligible for the insurance, (b) that the provision dispensing with evidence of insurability being in conflict with the insurer's reliance on the good health provision of the certificate of insurance issued to the debtor prevails under the rule that conflicts must be resolved against the insurer and (c) the copy of the instrument containing the alleged "representation" of good health was not furnished to either the debtor or to the beneficiary and therefore cannot be used in a contest for the proceeds of the policy. The view we take of the case will not require a discussion of all of these points and in our opinion the judgment below should be affirmed for the reasons hereinbelow stated.

Appellant here relies solely upon the alleged "misrepresentation" that the debtor was in good health. Whether the "sound health" provision [1] of the group policy was, as a matter of law, breached is not properly before us and we do not pass upon that question. It is the settled law however that a stipulation in a policy of insurance that the insured must be in sound health on the date of the issuance of the policy is valid and is often times written as a condition precedent to the policy's becoming effective. Lincoln Income Life Insurance Company v. Mayberry, 162 Tex. 492, 347 S.W.2d 598 (1961); Texas Prudential Insurance Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242 (1957). This case was not tried upon the theory that the debtor was not in "sound health" upon the date his indebtedness was created within the meaning of the policy provision to which reference has been made hereinabove.

In order to avoid a policy of insurance because of alleged misrepresentations, the burden is upon the insurer to plead and prove not only that the answers made by the insured were false or untrue, but that the insured knew, or should have known, that they were untrue and that he made them willfully and with the intention of inducing the insurer to issue the policy. Occidental Life Insurance Co. of California v. King, 365 S.W.2d 815 (Tex.Civ. App., San Antonio, 1963, n. r. e.); Clark v. National Life & Accident Insurance Company, 145 Tex. 575, 200 S.W.2d 820 (1947); Roosth v. Lincoln National Life Insurance Co., 269 F.2d 171 (1959, Fifth Cir.)

Assuming arguendo that the debtor Johnson made a "representation" that he was in "good health" when he affixed his signature to the application for credit life insurance, and that such statement was untrue, the appellant failed to discharge its burden to show, in addition thereto, his

---

1. (4) Sub-section (7) of Paragraph III of the Group Policy reads as follows: "No insurance shall take effect on the life of any debtor who on the date his debtedness is created is not alive and in sound health. * * * "

knowledge of its falsity and that the same was made by him with intent to deceive the insurer and that the policy was issued in reliance upon such representation. Occidental Life Insurance Co. of California v. King, supra.

There are other reasons why the judgment of the trial court should be affirmed. Article 3.50, Texas Insurance Code, Section 2, V.A.T.S., provides that "No policy of group life insurance shall be issued or delivered * * *." Following thereafter are ten standard provisions for life insurance policies, with a provision in the Article that Standard Provisions 6 to 10 shall not apply to policies issued to a creditor to insure debtors of such creditor. Standard provisions 2 [2], 3 [3] and 4 [4] are here material. It is shown without dispute that the certificate of good health upon which the appellant relies was not furnished to the debtor Johnson or his beneficiary. The only written instrument as shown by the record signed by the debtor was the IBM card, which was the first part of the four-part form supplied to the bank by the insurance company to complete certificates of insurance in regard to debts insured. The IBM card was forwarded to the insurance company. We have been cited no Texas cases construing provisions similar to Standard Provision (3) aforesaid, but the appellee cites and relies upon the case of Layman v. Continental Assurance Co., 430 Pa. 134, 242 A.2d 256, (1968) in which a similar provision in the Pennsylvania Statute was construed. The Pennsylvania Court upheld the validity of such a provision and held that the statement, in order to be available to the insurer to contest the certificate of insurance, must be furnished to the debtor or his beneficiary prior to the death of the insured. The Court reasoned that one of the main purposes behind this requirement was to furnish the insured an opportunity to correct any error which might vitiate the policy. Such statement was not furnished to the debtor or his beneficiary in this case and for these reasons the statement allegedly made by the debtor Johnson cannot be used in a contest over the proceeds of the policy.

For the reasons above stated, the Trial Court's judgment is affirmed.

Judgment affirmed.

2. " * * * that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made * * *, unless it is contained in a written instrument signed by him."

3. "A provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all statements made by the policyholder or by the person insured shall be deemed representations and not warranties, and *that no statement* made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary, * * *." (emphasis added)

4. "A provision setting forth the conditions, if any, under which the insurer reserves the right to require a person eligible for insurance to furnish evidence of individual insurability satisfactory to the insurer as a condition to part or all of his coverage."