Charles B. JOHNSON, Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.

No. 15149.

Court of Civil Appeals of Texas, San Antonio.

Jan. 16, 1974.

Rehearing Denied March 6, 1974.

Green, Kaufman & Lanfear, San Antonio, for appellant.

James D. Baskin, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Charles B. Johnson seeks to recover on certificates of insurance issued by defendant, the Prudential Insurance Company of America, on the life of plaintiff's deceased wife, Katherine M. Johnson. Following trial to a jury, the trial court rendered judgment on the verdict in favor of defendant and plaintiff appeals from that judgment.

The jury found that the deceased insured, Mrs. Johnson, in her application for insurance, willfully omitted information that, at the time of making such application, she was under treatment for a cancerous condition, and that she willfully omitted such information with the intention of inducing defendant to issue its certificate of insurance. The jury further found that the information included in Mrs. Johnson's application did not give defendant knowledge that she was then undergoing treatment for cancer.

Nine of plaintiff's twenty-one points of error complain of defects in the court's charge to the jury. Plaintiff's objections to the charge were dictated to the court reporter prior to the time the charge was read to the jury. The objections were embodied by the reporter in a written instrument, bearing his certificate, which appears in the transcript. But there is in the record no instrument showing that the objections, after they were reduced to writing, were presented to the trial judge so that he could endorse his ruling thereon and affix his signature thereto.

■ Under these circumstances, plaintiff cannot complain of alleged defects in the charge. Rule 272, Texas Rules of Civil Procedure; Cody v. Mahone, 497 S.W.2d 382 (Tex.Civ.App.—San Antonio 1973, writ ref'd n. r. e.); Mergele v. Houston, 436 S.W.2d 951 (Tex.Civ.App.—San Antonio 1969, writ ref'd n. r. e.). Plaintiff's points Nos. 2, 3, 6, 7, 8, 9, 10, 17 and 18 cannot be considered.

■ Plaintiff's points Nos. 19, 20 and 21 are not briefed and will not be considered. Adams Leasing Co. v. Knighton, 456 S.W.2d 574 (Tex.Civ.App.—Houston [14th dist.] 1970, no writ).

Plaintiff's eleventh point asserts that his motion for instructed verdict was erroneously overruled because the right of defendant to contest plaintiff's claim was barred by a provision barring such contest after the insurance had been in force for a period of one year.

The insurance in question was group life insurance, with the group consisting of members of the National Education Association of the United States. The N.E.A. is identified in the Group or Master Policy as the policyholder. Members of the group desiring insurance were required to submit applications and to furnish information called for by questions included in the application form. When a group member's application has been accepted, a certificate of insurance is issued to that member. The certificate recites that it contains a summary of the provisions of the Group Policies principally affecting the member's insurance, and that all ". . . benefits are subject in every respect to the group policies which alone constitute the agreement under which payments are made."

The group policies involved each contained the following clause:

"The validity of this Policy shall not be contested, except for non-payment of premiums, after it has been in force for one year from its date of issue."

Plaintiff asserts that this incontestability clause prevents defendant from contesting liability, since the certificates of insurance evidencing the insurance on Mrs. Johnson's life had been issued more than one year prior to defendant's contest.

The incontestability clause found in the Group Policies, by its terms, bars a contest of the validity of "this policy" after "it" has been in force for a year from "its date of issue." It is clear that the only possible

antecedent for the pronouns "it" and "its" is "this policy." Therefore, substituting the antecedent of the pronouns for the pronouns, the clause by its language bars a contest of the validity of "this policy," except for nonpayment of premiums, after "this policy" has been in force for one year from "this policy's" date of issue.

◾ It is clear that the term "this policy" refers to the Group Policy, and not to the individual insurance purchased by the members and evidenced by the certificates issued to the insured members. Op.Atty.-Gen. No. M–117, August 11, 1967. We realize, of course, that opinions of the Attorney-General of this state are merely persuasive, and that the opinion in question deals with the proper interpretation of the incontestability clause required to be included in all insurance policies by Article 3.50, Section 2(2), Tex.Ins.Code Ann, V. A.T.S. But the reasoning on which the conclusion is based rests on statutory language very similar to the language found in the Group Policy, and we conclude that the conclusion reached in such opinion is sound.

The Group Policies contain the following statement:

> "All statements made by the *Policyholder* or *by the Members insured* . . . shall be deemed representations and not warranties, and no statement made by *any Member insured* hereunder shall be used in any contest of the insurance hereunder unless a copy of the instrument containing the statement is, or has been furnished, to such Member or to his Beneficiary. *No statement made by any Member insured* . . . relating to his insurability shall be used in contesting the validity of the insurance . . . with respect to which such statement was made after *such insurance* has been in force prior to the contest for *a period of two years during such Member's lifetime* nor unless it is contained in a written statement signed by him." (Emphasis added.)

The language of the policy clearly distinguishes between the N.E.A. as policyholder, and the members of the N.E.A. as the persons actually insured. It distinguishes between statements made by the policyholder and statements made by the members insured. It distinguishes between contests concerning the validity of "this policy" and contests of the validity of the members' insurance issued under the policy. Contests of the validity of "this policy" are barred after "this policy" has been in force for one year after date of its issue. With respect to contests of the validity of the insurance of individual members, it provides that no statement made by any member insured relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such member's lifetime.

◾ The language relating to use of a member's statement in a contest of the validity of his insurance is, in effect, an incontestability clause applicable to contests of the validity of that member's insurance. If the one-year clause which is applicable to contests involving the validity of "this policy" is applicable to contests involving the insurance of an individual member, then the provisions concerning the use of statements of the member in contests involving the validity of his individual insurance after the member's insurance has been in force for a period of two years during his lifetime would be completely illogical, since by that time the contest would be barred under the one-year clause applicable to contests of the validity of "this policy."

We conclude that the one-year incontestability clause is not applicable to contests involving the validity of an individual member's insurance.

Point No. 13 asserts that the trial court erred in denying plaintiff's motion for instructed verdict because defendant's right to contest plaintiff's claim is barred by

Section 2(2), Article 3.50 of the Texas Insurance Code.

Section 2(2) requires that each policy of group life insurance contain:

"A provision that the validity of the policy shall not be contested, except for nonpayment of premiums after it has been in force for two (2) years from its date of issue; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two (2) years during such person's lifetime nor unless it is contained in a written instrument signed by him."

■■ Except for the fact that the statutory incontestability period, insofar as the validity of the *policy* is concerned, is two years instead of one year, there is no significant difference between the statutory language and the language of the policy described in the course of our consideration and rejection of plaintiff's point No. 11. We, therefore, conclude that the two-year incontestability period applies only to contests involving the validity of the Group Policy, and that contests relating to the validity of the insurance of an individual member, where such contest is based on a statement of such member relating to his insurability, are not barred until the insurance has been in force for two years during the lifetime of such member. In the case before us, Mrs. Johnson's insurance was not in force for two years during her lifetime. .

Plaintiff's point No. 13 is without merit.

■ Points Nos. 12 and 14 complain of the reception in evidence of Mrs. Johnson's applications for insurance. Point No. 12 argues that the admission of such documents was error because defendant's right to contest plaintiff's claim was barred under the one-year incontestability clause con-

tained in the Group Policy, while under point No. 14 it is urged that the admission of the documents was error because defendant's right to contest plaintiff's claim was barred by the two-year incontestability clause described in Section 2(2) of Article 3.50 of the Texas Insurance Code.

In view of the conclusions reached as a result of our consideration of plaintiff's points Nos. 11 and 13, we must hold that points Nos. 12 and 14 present no valid complaint.

■ Point No. 4 complains of the action of the trial court in excluding the testimony of a witness, McClure, relating to the general usage, custom and practice in the insurance industry relating to investigation of an applicant's health condition where the application raises some question as to the insurability of the applicant. Substantially the same testimony was elicited from another witness who testified specifically concerning the practices followed by defendant. Under these circumstances, we cannot say that the error, if any, in excluding the McClure testimony, was reversible error.

Plaintiff's first point contends that he was entitled to an instructed verdict because the evidence established as a matter of law that defendant had waived its right to rely on the health condition of Mrs. Johnson at the time she applied for insurance as a defense.

The defense of concealment is based on the answers given by Mrs. Johnson to the questions contained in that portion of the application which directed the applicant to "SHOW HEALTH HISTORY FOR ALL PERSONS INSURED—Indicate complete details in question # 14." The only person to be insured was Mrs. Johnson. The application form furnished by defendant does not require the applicant to make any statement, representation or warranty to the effect that he is in good health at the time of applying for insurance.

The "health history" portion of the application consists of questions 12(a), 12(b), 12(c), 12(d), 13 and 14. Only the answers given by Mrs. Johnson in answer to questions 12(a), 12(b) and 14 are relevant to this case.

Mrs. Johnson answered "yes" to question 12(a), which inquired whether she had ever been treated or had known indications of "heart condition, high blood pressure, nervous disorders, diabetes, cancer or tumors." The inquiry, embodied in question 12(b), as to whether the applicant had consulted, or had been attended by, a doctor within the three years preceding the application was also answered "yes." These are the only two questions in the "health history" portion of the application.

Question 14 sought "DETAILS OF ALL 'Yes' ANSWERS ABOVE." This clearly required the applicant to give the details of her "yes" answers to questions 12(a) and 12(b). The answer to question 14 was to be written in three blank lines appearing below the question. In response to question 14, the applicant was requested to give information relating to "Conditions, # of attacks, operations, etc.," the date of the onset of the illness, the year and month of "complete recovery," and the names and addresses of physicians and hospitals. In answer to question 14, Mrs. Johnson wrote, "Mastectomy (Removal of Breast—) June, 1957 Nylene Eckles, M.D., M. D. Anderson Hospital Houston, Texas." She also added, although this information was not called for, "(I am an active teacher)."

The disclosures made by Mrs. Johnson in answer to question 14 obviously related to her "yes" answer to question 12(a). In that respect, her answer was, on its face, incomplete, since it did not disclose the condition which made the operation necessary, the date of onset of the illness, nor the year and month of complete recovery. The application was, on its face, further incomplete because Mrs. Johnson made no effort to give the details of her "yes" answer to question 12(b). The application

was dated November 12, 1968. The disclosure that the applicant had consulted, or had been attended by, a doctor within the past three years clearly was not explained by an answer to question 14 relating to an operation in 1957.

After receiving Mrs. Johnson's application, defendant, by letter dated November 27, 1968, informed Mrs. Johnson that more information was needed and requested that she answer the ". . . questions in paragraph # 2 below." Paragraph # 2, in its entirety, reads: "Complete and accurate details of the following health condition: Mastectomy. Date of complete recovery."

Mrs. Johnson's response to this inquiry was received by defendant on December 6, 1968. Mrs. Johnson's answer to the November 27 inquiry, over her signature, was as follows:

"I had the Mastectomy on June 17, 1957. I had Cobalt treatments in Aug. 1957. And recovered from this treatment in Sept. 1957. I have taught for the last 11 years except for 1 year and ½ year when I took leave to be at home with my children."

Upon receipt of this information, defendant accepted Mrs. Johnson's application for N.E.A. group life insurance. The records of defendant which were introduced into evidence established that defendant accepted Mrs. Johnson as a person who had suffered from cancer in 1957, had been successfully treated, and had not suffered a recurrence of the disease.

The record in this case conclusively establishes that for more than ten years prior to the time that Mrs. Johnson submitted her application for life insurance to defendant she had been suffering from, and receiving treatment for, cancer. The jury's finding that she "willfully" omitted to include this information in her application, a finding that is not here challenged, establishes that, at the time she submitted her application, she knew that she was a victim of cancer.

Plaintiff first relies on the rule that where an application for insurance discloses on its face that a question has been incompletely or imperfectly answered, or that it is not answered, the acceptance of the application without a request by the insurer for additional information, clarification or completion constitutes a waiver of the incompleteness, insufficiency, or imperfection of the answer. 7 Couch, Insurance 2d, Section 35.261 (1961).

■ As already pointed out, insofar as the answer to question 14 related to the "yes" answer to question 12(a) the application, on its face, was incomplete. But defendant did not accept this application without further inquiry. It requested clarification and completion concerning explanation of her answer to question 12(a), and it received from Mrs. Johnson information which made the explanation complete, at least on the face of the application. Insofar as Mrs. Johnson's explanation of her answer to question 12(a) is concerned, the application is complete on its face and the rule relied on by plaintiff is not applicable.

■ The application is, of course, incomplete insofar as the answer to question 12(b) is concerned, as pointed out above. But an incomplete answer to one question does not waive a misrepresentation made in an answer to another question. It cannot be seriously urged that Mrs. Johnson's response to defendant's followup inquiry of November 27, 1968, was false in that it represented that she had completely recovered from the cancerous condition with which she had been plagued more than ten years previously. This is particularly true in view of her statement to the effect that during the preceding eleven years she had been absent from her teaching job only when she took leaves of absence for reasons which she represented as having nothing to do with her health.

■ Plaintiff also argues that Mrs. Johnson's application was sufficient, as a matter of law, to require defendant to investigate further, and that defendant, having opted to forego such additional investigation and to rely, instead, on the statements made by Mrs. Johnson on her application, has waived any defense based on information which such further investigation would have revealed. It is true, as plaintiff points out, that Mrs. Johnson, in her answer to question 14, referred to Dr. Eckles and the M. D. Anderson Hospital in Houston, a hospital which the record discloses is known far and wide as a center for the treatment of cancer. It is also true that inquiry made of Dr. Eckles and an examination of the hospital records would have revealed the extensive treatment which Mrs. Johnson had received and which, at the time of the submission of her application, she was still undergoing. In fact, after Mrs. Johnson's death, examination of such hospital records furnished defendant with the information which forms the basis for its defense.

While the evidence in this case is, perhaps, sufficient to support the conclusion that defendant did not act prudently in relying on Mrs. Johnson's misrepresentations, we do not believe that it compels that conclusion as a matter of law. Since no issue was submitted to the jury inquiry whether, under all the facts and circumstances, defendant was put on such notice as would require independent investigation; since the jury, in a finding not here challenged, concluded that defendant had no knowledge of the true facts; and since it cannot be said that, as a matter of law, that defendant was put on such notice as would require further investigation, plaintiff's waiver points cannot be upheld.

■ Plaintiff's point No. 5 contends that the trial court erred in admitting into evidence Mrs. Johnson's application for insurance, and her response to the followup inquiry made by defendant after receipt of the original application, because such instruments, according to their own terms, contain no material misrepresentation with

respect to any inquiry made therein by defendant.

This contention cannot be sustained. Mrs. Johnson was directly asked to give information concerning treatment for various specifically named diseases, including cancer. We agree that her answers were sufficient to disclose that she had suffered from cancer in 1957. But she was further specifically asked to give the date when she recovered, and she stated that she had recovered in 1957, knowingly withholding the information that her cancerous condition had not been eliminated. We do not hold that an applicant for insurance is under a duty to volunteer information not inquired about in the application prepared by the insurer. But we do hold that in this case the information which Mrs. Johnson willfully withheld was the subject of a specific inquiry which she answered falsely not only by giving an untrue answer, but by withholding information material to the risk.

Finally, in point No. 16, plaintiff insists that he was entitled to an instructed verdict because defendant, not having furnished a copy of the application for insurance to Mrs. Johnson or to her beneficiary (plaintiff) during Mrs. Johnson's lifetime, is barred from using statements contained in the application as a defense to plaintiff's claim.

Section 2(3) of Article 3.50 of the Insurance Code requires that all group life insurance policies contained:

"A provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, and that no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary."

As already pointed out, the Group Policy, which was delivered to the policyholder, N.E.A., contained the required statement.

Neither the statute nor the policy provision states that a copy of the instrument containing the statement relied on by the insurer, must, in order for the insurer to be entitled to rely on such statement, be delivered to the insured or to his beneficiary *during the lifetime of the insured*, but plaintiff insists that delivery of the instrument during the lifetime of the insured is necessarily implied.

Our attention has been called to only two cases, and we have found no others, involving the interpretation of similarly worded statutory provisions, and in those two cases contrary results were reached with respect to the validity of the contention here urged by plaintiff.

In Coleman v. Aetna Life Ins. Co., 261 F.2d 296 (7th Cir. 1958), the Court, interpreting an Illinois statute containing language substantially the same as that found in our Insurance Code held that delivery of a copy of the instrument during the lifetime of the insured was not necessary, and that the requirement was complied with if the insured attached a copy of the instrument to its answer which was served on the plaintiff-beneficiary. The Court gave little consideration to the problem, merely interpreting the statute literally and pointing out that it found nothing in the statute " . . . that requires a copy to be furnished at an earlier date." 261 F.2d at 299.

The Supreme Court of Pennsylvania has reached a contrary result, concluding that the effect of statutory language similar to that found in the Texas statute requires a delivery of a copy of the instrument during the lifetime of the insured. Layman v. Continental Assurance Co., 430 Pa. 134, 242 A.2d 256 (1968). The Court in *Layman* reasoned that the purpose of the provision is to give the insured or the beneficiary a chance to correct errors in the application which might vitiate the policy,

and that the achievement of such purpose made necessary a delivery of the copy during the lifetime of the insured since, manifestly, correction of the error would be impossible after the death of the insured.

A New York court held that delivery of a copy of the application to the beneficiary, after the death of the insured, was not sufficient compliance with a statutory requirement that a copy of the application be *attached to and returned with the policy*. Such a statute, of course, differs significantly from the provision found in Texas and in the statutes construed in *Coleman* and *Layman*. Since the policy is normally delivered to the insured shortly after the acceptance of his application, a requirement that the application be attached to and returned with the policy clearly contemplates a delivery of a copy of the application during the lifetime of the insured. However, the New York court did point out that the purpose of the statute is to " . . . protect insureds from loss of their insurance after many years of premium payment without knowledge of infirmities in the contract . . . even if the insurance is procured by their own fraud." Cutler v. Hartford Life Ins. Co., 22 N.Y.2d 245, 292 N.Y.S.2d 430, 436, 239 N.E.2d 361, 365 (1968).

Industrial Life Ins. Co. v. First National Bank of Perryton, 449 S.W.2d 129, 132 (Tex.Civ.App.—Tyler 1969, no writ), refers to the *Layman* case and recognizes that the basis for the *Layman* opinion is the conclusion that the purpose of the statutory provision in Pennsylvania is to afford the insured or his beneficiary an opportunity to correct errors in the application. But the *Perryton* decision, while it is based on the statutory provision on which plaintiff relies, offers no help, since it involved a situation where neither the insured nor the beneficiary had ever been furnished a copy of the application. In referring to *Layman*, the Tyler court merely mentioned that case as one on which appellee relied, and there is nothing in such reference which supports the conclusion that the Tyler court either approved or disapproved of the *Layman* holding.

To adopt the construction embraced in *Layman* would require that we add the words, "during the lifetime of the person insured" to the language of the statute. We decline to do so. It is, we think, a fair interpretation of the statutory language to conclude that the inclusion of the beneficiary as an alternative deliveree contemplated a situation where the insured had died. If delivery during the lifetime of the insured was the goal of the requirement, the attainment of that objective would have been guaranteed by simply requiring delivery to the insured, without reference to the beneficiary. If, in fact, as the *Layman* court reasoned, the purpose of the statutory requirement is to provide for an opportunity to correct errors in the application, the inclusion of the beneficiary as an alternate deliveree would be incongrous, since delivery to the beneficiary, rather than to the insured, can only have the effect of decreasing the possibility that such purpose will be achieved. The suggestion that, if the copy of the application were delivered to the beneficiary he would detect the error and prevail upon the insured to correct it rests on conjecture and speculation, and, in any event, offers no persuasive explanation of why the legislature would adopt this round-about method of insuring the achievement of the statutory purpose when a more direct and efficient method could be provided for by using fewer words.

Originally, Mrs. Johnson was insured in the sum of $12,000. Thereafter, she was offered an opportunity to increase the amount of insurance to $15,000. In order to avail herself of this opportunity, she submitted an application for the additional insurance on a form which inquired if, since her first application, she had been disabled for four weeks or more. She answered the question in the negative. The

jury found that this statement was false, and this finding is more than amply supported by the evidence. The evidence conclusively establishes that Mrs. Johnson knew that her representation relating to disability was false.

The judgment of the trial court is affirmed.