Charles B. JOHNSON, Petitioner,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.

No. B–4559.

Supreme Court of Texas.

Jan. 8, 1975.

Rehearing Denied Feb. 12, 1975.

Green, Kaufman & Lanfear, V. E. Lanfear, Jr., San Antonio, for petitioner.

Matthews, Nowlin, MacFarlane & Barrett, James D. Baskin, Jr., San Antonio, for respondent.

REAVLEY, Justice.

This is a suit to collect benefits under a group life insurance policy. The insurance company resists payment on the ground that the deceased insured willfully deceived the company by her statements made in procuring coverage; the company has obtained favorable findings to support this defense. The plaintiff beneficiary contends that the statements of the insured were inadmissible and could not be considered because copies of the instruments, in which the statements were made, were not furnished to the insured in compliance with Tex.Ins.Code Ann. art. 3.50, sec. 2(3), V.A.T.S. The trial court and Court of Civil Appeals (506 S.W.2d 238) have held that the insurance company has complied with the statute by furnishing copies of the instruments to the beneficiary prior to the trial.

Katherine Johnson was a teacher in the public schools and, as a member of the National Education Association, obtained insurance upon her life under a group policy issued by the Prudential Insurance Company of America. She applied for insurance coverage on November 12, 1968. Prudential issued its certificate for her coverage, effective January 1, 1969. The amount of the original benefit was $10,000; it was raised to $12,000 in April of 1969 and then to $15,000 in 1970. Katherine Johnson died on November 16, 1970; her husband was the beneficiary on the insurance contract and brought this suit against the insurer on June 25, 1971.

Some ten years before applying for this insurance, Mrs. Johnson's right breast had been removed because of cancer. From then until her death in 1970, though she continued her regular work as a schoolteacher, she suffered from the effects of cancer as well as from the rigors of its treatment and from periodic operations. In her original application, in her response to a letter of inquiry from Prudential dated November 27, 1968, and in her application for additional $3,000 benefit dated February 23, 1970, Mrs. Johnson made what she could have regarded as true statements, but they were incomplete and misleading. The adequacy of the findings made in the trial court on the issue of material misrepresentation is not before us. If these statements of the insured may be used in this case, Prudential's defense is established.

The question now is whether Mrs. Johnson's statements on the applications and the letter were admissible to support Prudential's defense. Copies of these instruments were not furnished to her prior to her death in November of 1970. Her beneficiary received copies on May 24, 1971, which was after he had been told that Pru-

dential would not pay and he had employed an attorney. The case then turns upon the effect to be given art. 3.50, sec. 2(3) of the Texas Insurance Code. That sec. 2 provides, in part, as follows:

Sec. 2. Group Life Insurance Standard Provisions.—No policy of group life insurance shall be issued or delivered in this State unless . . . it contains in substance the following provisions, or provisions which in the opinion of the Commissioner are more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder, . . .

\*   \*   \*   \*   \*   \*

(3) A provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, and that no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary.

The master group policies issued by Prudential contain language effectuating the requirement of this statute.

Prudential contends that the statute does not require the copy of the instrument to be furnished to the insured before her death, that the statute only requires Prudential to furnish the copy to the insured *"or to his beneficiary,"* and that it is enough that at the time of the offer into evidence the statement "is or has been furnished." This was the view of the Court of Civil Appeals. It is a reasonable construction of the words of the final clause of the quoted statute; indeed, upon initial study, it may be compelling. Further consideration leads to a different conclusion.

■ If the statute requires no more (i. e., only that copies may be furnished after

the defense based upon misrepresentation in the statements is announced and pleaded but prior to the offer of evidence at trial), the statute may facilitate the preparation of the case for the beneficiary, but it is not even as much aid to the cause of the insured's beneficiary as are the rules of discovery. Was it the intention of the Legislature to do no more than encore an aid to the beneficiary in the event of and in the course of trial? If that were the effect of the statute, it could hardly be said that the Legislature thereby bestowed any protection to the public and the insured— in whose favor both statute and policy provision should be liberally construed. Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953); Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379 (1951); 3 Sutherland Statutory Construction § 70.05 (4th ed. 1974).

■ The first clause in the above quoted subsection 2(3) puts us upon the track of a proper understanding of the legislative intention. It requires that a copy of the application of the policyholder be attached to the policy. This requirement is in accord with long established legislative provisions which exist for well recognized reasons. Applications for insurance and other written statements made in that connection are often filled out or written by insurance agents or others and only signed by the insured. It has often been held that it is the underlying legislative intention to require that the insured have the material terms of the contract at hand during his lifetime in order that he might examine and correct any misrepresentations which have been made the basis of the insurance coverage. E. g., Syme v. Bankers National Life Ins. Co., 393 Pa. 600, 144 A.2d 845 (1958); Dohse v. Market Mens Mutual Ins. Co., 253 Iowa 1186, 115 N.W.2d 844 (1962); Archer v. Equitable Life Assur. Soc. of U. S., 218 N.Y. 18, 112 N.E. 433 (1916); Federal Life & Casualty Co. v. Lisle, 14 Ohio Op.2d 269, 172 N.E.2d 919

(1959); aff'd 14 Ohio Op.2d 274, 172 N. E.2d 146 (1960); Meyer, Life and Health Insurance Law § 6:7 (1972); 1 Couch on Insurance 2d ch. 4, p. 150 (1959); Anno: "Noncompliance with statutory requirement that insurance policy contain entire contract . . ." 93 A.L.R. 374 (1934). Attachment of the application to the policy may be beneficial to the insurance company as well as to the insured, because the knowledge of the insured of the statements contained in the application is thereby conclusively established. Odom v. Insurance Company of State of Penn., 455 S.W.2d 195 (Tex.1970).

■ Since 1903 Texas has had a statutory provision requiring the attachment of application and policy in certain insurance contracts. Acts 1903, 28th Leg., ch. 69. As Article 4951, R.S.1911, as Article 5049, R.S.1925, and as the present Article 21.35 of the Texas Insurance Code, this statutory provision has been repeatedly applied to prevent the use of statements of the insured which were not attached to the policy when the insurance company has sought to avoid payment by proof that the statements were false and were fraudulently made to procure issuance of the policy. Southwestern Surety Ins. Co. v. Hico Oil Mill, 229 S.W. 479 (Tex.Comm.App.1921); Washington National Insurance Co. v. Adams, 334 S.W.2d 826 (Tex.Civ.App.1960, no writ); National Educators Life Ins. Co. v. Morgan, 295 S.W.2d 713 (Tex.Civ. App.1956, no writ); American Bankers' Ins. Co. v. Speaker, 68 S.W.2d 555 (Tex. Civ.App.1934, writ dism'd); American Indemnity Co. v. Baldwin Motor Co., 19 S. W.2d 848 (Tex.Civ.App.1929, writ dism'd).

■ When the Texas Legislature in 1931 first enacted a statute regulating group life insurance, it required policies to contain the following:

"A provision that the policy, the application of the employer and the individual applications, if any, of the employees insured, shall constitute the entire contract between the parties, and that all statements made by the employer or by individual employees shall, in the absence of fraud, be deemed representations and not warranties, and that no statement shall be used in defense of a claim under the policy, unless it is contained in a written application." Acts 1931, 42nd Leg., Reg.Sess., ch. 101, sec. 2(2).

The statute was rewritten in 1947, and it was at that time that the precise language of the present sec. 2(3) was placed into the law. Acts 1947, 50th Leg., Reg.Sess., ch. 208. The same wording of sec. 2(3) was re-enacted by amendments in 1969 and 1971. Acts 1969, 61st Leg., Reg.Sess., ch. 557; Acts 1971, 62nd Leg., Reg.Sess., ch. 982. The first clause specifically requires that the application of the policyholder be attached to the policy when issued. It would be of little use to the individual insured to have his own application added to the policy. The "policy" is the master group policy; the individual insured may receive only a certificate, and if the coverage is credit insurance there need be no certificate delivered to him. It is the last clause of this same sentence of sec. 2(3) that extends the same protection to the individual insured which the policyholder received by the first clause. The intent of the requirement that copies of his statements be furnished to the insured must be to show him this basis for his coverage and to afford him the opportunity to make any correction needed. The statute has, since the 1913 Act, provided for the insurance company to deliver the certificate, if any, to the employer or policyholder. Art. 3.50, sec. 2(7). The only instrument which must be furnished directly to the insured is his application or other writing signed by him to obtain the coverage.

The objective of the Legislature in enacting the last clause of sec. 2(3) must have been the same as that which has produced other enactments requiring that insureds have in their possession those statements upon which their coverage is based.

This statutory language has been so construed by other courts. Industrial Life Ins. Co. v. First Nat. Bank of Perryton, 449 S.W.2d 129 (Tex.Civ.App.1969, no writ); Layman v. Continental Assurance Co., 430 Pa. 134, 242 A.2d 256 (1968); cf., Cutler v. Hartford Life Ins. Co., 22 N.Y.2d 245, 292 N.Y.S.2d 430, 239 N.E.2d 361 (1968); 7 Couch on Insurance 2d § 35:155.1 (Supp.1973). No case has been found which has construed similar statutory language to contrary effect. A policy provision worded similar to this statute was given the effect urged by the insurance company in Coleman v. Aetna Ins. Co., 261 F.2d 296, 72 A.L.R.2d 688 (7th Cir. 1958), but the California Supreme Court reached a contrary result on the basis of a policy provision in Metzinger v. Manhattan Life Ins. Co., 71 Cal.2d 423, 78 Cal.Rptr. 463, 455 P.2d 391 (1969).

It is therefore the holding that sec. 2(3) requires the insurer to furnish promptly to the individual insured copies of his application or other written statements material to the issuance of his coverage. Should the insured die immediately after his coverage is effective and before the insurer has had reasonable opportunity to furnish him with these copies, they may be furnished to the beneficiary. Failure to comply with this requirement will mean, as the statute says, that the statements may not be used by the insurance company in contesting payment of the benefit.

The trial court erred in not granting plaintiff's motion for judgment. The judgments of the lower courts are reversed; the cause is remanded to the trial court for entry of judgment.

Dissenting opinion by DENTON, J.

DENTON, Justice (dissenting).

I respectfully dissent. It is my opinion that the court of civil appeals has correctly decided this case and I agree with that opinion. 506 S.W.2d 238.