**FREDONIA STATE BANK, Executor of the Estate of Claytor Blake, III, et al., Appellants,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellee.**

No. 12–90–00293–CV.

Court of Appeals of Texas, Tyler.

June 30, 1995.

Rehearing Overruled Aug. 31, 1995.

L. Giles Rusk, Nacogdoches, K. Scott Brazil, Houston, C.L. Ray, Charles B. Lord, Austin, for appellants.

Steve Roper, Robert T. Cain, Linda O. Poland, Lufkin, for appellee.

### OPINION ON REHEARING OF THE OPINION ON REMAND

RAMEY, Chief Justice.

Motions for Rehearing and responses have been filed by both litigants. After reconsidering the merits of our original opinion on remand and other questions raised by the respective motions, we withdraw the Original Opinion on Remand and substitute the following opinion:

This action was brought by Appellant Fredonia State Bank, Executor of the Estate of Claytor Blake, III, Deceased, Fredonia State Bank, Commercial National Bank, and Claytor Blake, Inc. ("Fredonia") seeking life insurance proceeds from Appellee General American Life Insurance Company ("General") on two life insurance policies.[1] On appeal, this Court reversed the judgment of the trial court and remanded for retrial of some, but not all, of the contested issues. *Fredonia State Bank v. General American Life Ins. Co.,* 884 S.W.2d 167 (Tex.App.—Tyler 1992, writ granted)[2]. The supreme court then granted Fredonia's writ of error and reversed with instructions for us to consider one specific point on remand. *Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279, 285 (Tex.1994). After engaging in the mandated review, we adhere to the prior conclusion that the judgment of the trial court should be reversed and the cause remanded for a new trial.

The supreme court specifically directed this Court to proceed as follows:

---

ways require reversal. The jury argument is improper and lawyers have employed such improper argument on too many occasions. The courts have repeatedly admonished lawyers who engage in personal attacks on opposing counsel. The admonishments have been ignored. Perhaps stronger sanctions will be heeded.

1. Blake made a single application for a single life insurance policy with a face amount of $500,000.00. His agent changed this to an application for two policies with a face value of $250,000.00 each. Thus, the disputed issue of the application's attachment turns on whether the two copies allegedly made of the single application were attached to the two policies when they were delivered to Blake.

2. The original court of appeals opinion was heard and submitted to a panel sitting by assignment by the Chief Justice of the Texas Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988) consisting of Honorable T.C. Chadick, retired chief justice of Court of Appeals, Sixth District of Texas at Texarkana, Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston.

[O]n remand, the court of appeals should conduct a Pool analysis to determine if the *evidence recited in General American's brief* shows that the jury's findings [on whether the copies of Blake's application were attached to his policies when received] are against the great weight and preponderance of the evidence, as General American asserts.

*Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d at 285 (emphasis added).

■ The standard for reviewing the factual sufficiency of this evidence depends upon an issue disputed in the original appeal, the determination of which party had the burden of proof on the question of whether the copies of the insured's application were attached to the policies:

> When the party who did not have the burden of proof brings a factual sufficiency attack to reverse a finding favoring the party who did have the burden of proof on a preponderance of the evidence, the appealing party must establish that *all* the evidence, considering evidence *both for and against* the fact finding, is so weak or insufficient that the finding is manifestly unjust.

6 McDonald Texas Civil Practice, § 44:10(b), p. 863 (1992 ed.) (emphasis added).

The barring of a misrepresentation defense because of the insurer's failure to attach an application can be likened to an affirmative defense, which operates, not to rebut or deny a factual allegation, but "to open the way ... to adduce evidence establishing an *independent* reason" to defeat an asserted claim or defense. *W.R. Grace Co. v. Scotch Corp., Inc.,* 753 S.W.2d 743, 746 (Tex. App.—Austin 1988, writ denied) (emphasis in original). As a general rule, the burden of proving an affirmative defense rests upon the party asserting it. *Chrysler–Plymouth City, Inc. v. Guerrero,* 620 S.W.2d 700, 706 (Tex. Civ.App.—San Antonio 1981, no writ). We conclude that the burden of proof of establishing an insurer's failure to attach an application to an insurance policy to preclude the assertion of the affirmative defense of misrepresentation should be borne by the party who would avoid consideration of the defensive claim of misrepresentation—here, Fredonia.[3]

■ As directed by the supreme court, the evidence concerning this issue is summarized in less than a page in General's brief, and consists, in full, of the following:

> Dale Wier, one of the two agents from whom Blake purchased these policies, testified that he is "not sure either way" whether the medical part of the application was attached to the policies at the time he delivered them to Blake (SF 167). The reason for this statement is because he did not look at it (the application) when he delivered it (SF 170), clarifying that his reference was to the medical portion of the

---

3. Fredonia contends that in imposing the burden of proof on the issue of application attachment on it, the court has placed the burden of proof of General's affirmative defense of misrepresentation upon it as well and has "transformed the mere allegation of misrepresentation into an established claim". We disagree. The act of attaching the application to the policies is not a sixth element of the insurer's fraudulent misrepresentation defense. Claimed failure to attach the application pertained to the conduct of *General,* and if such claim be sustained, would enure to *Fredonia's benefit.* Contrarily, the alleged fraudulent misrepresentation defense pertained to the conduct of *Blake,* and if the claim be sustained, would enure to *General's benefit.* Likewise, the purpose of accurate answers to medical application inquiries is, of course, to provide the *insurer* with underwriting information, whereas the purpose of requiring the insurer to attach the application is to assure that the *insured* may correct any misrepresentation. *Fredonia State Bank,* 881 S.W.2d at 283; *Johnson v. Prudential Ins. Co. of Am.,* 519 S.W.2d 111 (Tex. 1975). Rather than transforming the allegation of fraudulent misrepresentation into an established claim, the "failure to attach" contention is a precondition that serves to foreclose any consideration by the factfinder that the insured might have made a fraudulent misrepresentation to the insurer. *Ibid.* Other factors supporting our imposition of the burden of proof upon Fredonia are the ease and difficulty of making proof of attachment (policy was in Fredonia's possession since inception) and the comparative likelihood that the insurer would have attached the application as directed by Article 21.35 of the Texas Insurance Code. *See* 2 R. McDonald Texas Civil Practice § 9.44 (1992 Rev.).

application (SF 173). Wier does not know if the application was attached to the policy when he picked it up from Randy Price or Fredonia Bank following Blake's death to forward it to General American for processing (SF 179). He forwarded them exactly as he received them from the bank (SF 182). Wier never received any communication from defendant after he returned the policies that the application was not attached (SF 194).

Sandra Blake testified that the application was not attached to the *copy* of the policy she reviewed in the office of Fredonia State Bank's President (SF 492, 497). She never saw the original of the policies, does not know who made the copies, or when (SF 498). Claims Director Kasalko testified that nothing in the underlying file exists to substantiate the idea that a copy of the application was not attached to each policy when the company received the policies from the agent (SF 1493).

Appellee's Brief, pp. 42–43, filed December 21, 1990 (emphasis in original).

There was no direct evidence regarding whether the copies of the applications were missing at the time that the policies were delivered to Blake. Wier's testimony was that he did not know, and would not have known, of the actual contents and enclosures of the policies when they were delivered to Blake. Though Wier testified in his deposition that "the medical portion of the application" was not with the policy when delivered, he went on to clarify that, by "the medical portion," he meant not the application at issue here but a separate document not relevant to this controversy.

As to Claims Director Kasalko, he testified, in the cited record references, that General's practice was that after mailing a copy of the application and policy to a new policyholder, the company would retain only a microfilm copy of the application and destroy the original application. The copy of the application admitted into evidence here was indisputably not a copy of a microfilm record. A sample of a copy from microfilm and a sample of a non-microfilm copy demonstrated the distinction between these two types of copies. Kasalko then testified that a non-microfilm copy of the application was in General's possession after Fredonia returned the policy to General. Since General did not retain any but microfilm copies, he explained that such non-microfilm documents must have been the copies of the applications that were originally attached to Blake's insurance policies and returned to General after Blake's death. As the fact-finder, the jury was not required to believe Kasalko's description of General's policy in handling applications or that it was followed with reference to these policies.

Here, the only evidence that the copies of the application were not attached was Sandra Blake's testimony that a copy of the application was not attached to a copy of one of the policies in Fredonia's possession after Fredonia had returned the documents it received from Blake to General. There was no competent evidence of who made the copy that Sandra Blake saw, or whether it was identical to the policy that was surrendered to General. We hold that this evidence, considering evidence both for and against the fact finding under our standard of review, is so weak or insufficient that the jury finding is manifestly unjust, and the point of error must be sustained.

Our consideration of the case having been specifically limited to a review of the factual sufficiency of the finding that the application was not attached to the policies, our disposition is determined by otherwise unaltered opinion of the panel on original appeal that the judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.

The respective motions for rehearing are overruled except as expressed herein.